Argued December 13, 1978, reversed April 23, 1979

BURKE et al, *Respondents,*
*v.*
CHILDREN'S SERVICES DIVISION et al,
*Appellants.*
(No. 414-115, CA 10501)
593 P2d 1262

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for appellants. With her on the briefs were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Gary Roberts, Legal Aid Service, Portland, argued the cause for respondents. With him on the brief were Michael H. Marcus and Robert B. Johnstone, Legal Aid Service, Portland.

Before Schwab, Chief Judge, and Roberts, Judge, and Howell, Judge Pro Tempore.

ROBERTS, J.

**ROBERTS, J.**

In this case, which is here for the second time, plaintiff brings a "class action suit in equity" against the defendant state agencies. Plaintiff is a recipient of benefits under the Aid to Families with Dependent Children (AFDC) program. Prior to February 15, 1975, in conjunction with that program, defendant enjoyed child care benefits in the form of direct payments by the defendant Children's Services Division (CSD) to persons who provide day care services for plaintiff's children while she works. Effective that date, CSD purported to discontinue direct payments to providers because of budgetary problems, and thereafter the child care benefits for plaintiff took the form of work-related expense allowances by the Public Welfare Division of the defendant Department of Human Resources (PWD). The effect of the change in benefit programs was to reduce the net available income of plaintiff and of other persons receiving similar child care benefits.

Both the direct provider payment system followed by CSD and the new PWD system would provide plaintiff with benefits sufficient to meet the requirements of the applicable federal regulation (45 CFR § 220.61(e)(11)) and state statutes pertaining to child care benefits. She argues, however, that CSD discontinued the direct provider payments without following the notice, hearing and other rule-making requirements of the Oregon Administrative Procedures Act, ORS chapter 183 (APA), and that the agency's action therefore violated the APA, the notice and hearing requirements of 45 CFR § 205.10(a),[1] and the due

---

[1] The portions of 45 CFR § 205.10(a) upon which plaintiff relies provide:

"(4) In cases of intended action to discontinue, terminate, suspend or reduce assistance:

"(i) The State or local agency shall give timely and adequate notice, except as provided for in paragraphs (a)(4)(ii), (iii), or (iv) of this section. Under this requirement:

"(A) 'Timely' means that the notice is mailed at least 10 days before

process clause of the Fourteenth Amendment to the United States Constitution.

CSD effected the discontinuance of direct provider payments through what it considered to be an "internal management directive" as defined by ORS 183.310(7)(a), rather than by adopting a rule in the manner prescribed by ORS 183.335 and other applicable provisions of the APA. A notice of the discontinuance, dated February 13, 1975, was received by plaintiff on February 15, the effective date of the termination of payments. When this case was before us previously, we reversed the trial court's determination that the discontinuance of direct provider payments could be effected through an internal management directive, and we held that the APA's rulemaking requirements were applicable. *Burke v. Children's Serv. Div.,* 26 Or App 145, 552 P2d 592 (1976). On remand, plaintiff moved for partial summary judgment. The trial court allowed the motion and ordered, first, that CSD resume its previous practice of making direct payments to providers of day care services, and second, that CSD locate and pay damages to plaintiff and other eligible recipients "in the amount by which their net available income has been reduced as a result of CSD's discontinuance of direct

the date of action, that is, the date upon which the action would become effective.

"(B) 'Adequate' means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request an evidentiary hearing (if provided) and a State agency hearing, and the circumstances under which assistance is continued if a hearing is requested;

"* * * * *

"(iii) When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be 'adequate' if it includes a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued."

We consider that other portions of section 205.10(a), which will be discussed below, are also relevant.

[822]

vendor payments."[2] Defendants appeal, and we reverse.

The issue in this appeal is whether the trial court had authority to direct CSD to resume a particular substantive policy in light of the agency's failure to follow proper procedures to terminate that policy. If the court lacked that authority, it follows that the court also had no authority to direct the agency to pay damages based on the loss to plaintiff and others resulting from the termination of the policy. As we previously held, CSD should have followed required rule making procedures in terminating direct provider payments. However, CSD also failed to follow the same required procedures to initiate the policy of direct provider payments. Therefore, as defendants aptly observe:

> "The circuit court's order requires CSD to resume direct day care payments for plaintiffs pursuant to 'rules' in effect prior to February 15, 1975. CSD has no 'rules' to return to."

*Cf. Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973). Moreover, on February 16, 1975, the day after CSD purported to terminate direct provider payments, PWD promulgated a temporary rule to implement the new benefit policy of work-related expense allowances. That temporary rule was later adopted as a permanent rule. OAR 461-04-516. Plaintiff does not challenge the validity of the temporary or permanent PWD rules.

Assuming arguendo that there can ever be an

---

[2] The plaintiff's motion for partial summary judgment sought other specific relief in addition to the relief reflected by the order, including a declaration that certain temporary rules adopted by CSD did not comply with the statutory rule-making requirements or the regulatory notice and hearing requirements. Although the trial court's letter opinion indicated that the court would afford plaintiff all the relief she sought, the order which was submitted to and signed by the trial judge gave only the relief we have described. What is before us for review, of course, is the trial court's order and not its letter to counsel. *State v. Swain/Goldsmith,* 267 Or 527, 517 P2d 684 (1974). We do not reach the merits of the other issues raised by plaintiff's motion, but we note that they would be substantially influenced by the existence of the PWD rules discussed *infra. See State v. Alexander,* 6 Or App 526, 487 P2d 1151, *rev den* (1971).

occasion when the courts can remedy an agency's non-compliance with the APA's rule making requirements by directing the agency to adhere to the substantive policy of a pre-existing rule,[3] this is not such an occasion. Here, the substantive policy which the trial court ordered CSD to resume had not been embodied in a validly promulgated prior rule, and an alternative system of benefits for plaintiff and persons similarly situated took effect, under the unchallenged rule of another agency, the day after CSD's policy of direct provider payments was discontinued.

For the foregoing reasons, we conclude that the trial court did not have authority to remedy defendants' noncompliance with the APA's rule making procedures by requiring CSD to resume its pre-existing policy or to pay damages to eligible recipients equal to the amounts they would have received had that policy remained in effect.

Plaintiff contends, however, that independently of the trial court's authority under the APA, its order was authorized and required by 45 CFR § 205.10(a), and by the due process clause of the Fourteenth Amendment as construed in *Goldberg v. Kelly,* 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970) and related cases. In *Goldberg* the United States Supreme Court held that an individual's entitlement to welfare benefits cannot be terminated without a pretermination evidentiary hearing on the issue of eligibility under applicable statutory or regulatory criteria. We doubt whether the holding in *Goldberg* would apply to this plaintiff even if she were asserting an individual entitlement to an ongoing level of benefits under an ongoing legislative program—whether statutory or regulatory. *See Mathews v. Eldridge,* 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976). We need not reach that question, however, because the plaintiff is not chal-

---

[3] *But see* ORS 183.490; *Bay River v. Envir. Quality Comm.,* 26 Or App 717, 554 P2d 620 *rev den* (1976); *Gray Panthers v. Pub. Wel. Div.,* 28 Or App 841, 561 P2d 674 (1977); and *Sowell v. Workmen's Comp. Bd.,* 2 Or App 545, 470 P2d 953 (1970).

lenging a quasi-judicial determination which reduces or eliminates her own benefits alone; she challenges an administrative determination, which she argues and which we previously held was required to be made in accordance with legislative rule-making requirements, to change the program through which she and all other recipients receive benefits. We stated in *Allison v. Washington County,* 24 Or App 571, 548 P2d 188 (1976):

> "* * * In this context, a substantial majority of cases hold there is no constitutional right to notice or hearing,[5] a consideration that would arise in the separate context of quasi-judicial land-use determination."(Footnote 6 omitted.)

> _____
> "[5]The leading case holding there is no constitutional right to notice and hearing before a legislative body adopts legislation is *Bi-Metallic Co. v. Colorado,* 239 US 441, 36 S Ct 141, 60 L Ed 372 (1915). * * *" 24 Or App at 575-76

The principles expressed in *Allison* are equally applicable here. *See Whitfield v. King,* 364 F Supp 1296 (MD Ala 1973).

Finally, plaintiff argues that 45 CFR § 205.10(a) requires that she receive continued benefits at the existing level until that section's notice and hearing prerequisites for reducing benefit levels are met. We disagree. As relevant, 45 CFR § 205.10(a)(6) provides:

> "(6) If the recipient requests a hearing within the timely notice period:

> "(1) Assistance shall not be suspended, reduced, discontinued or terminated, (but is subject to recovery by the agency if its action is sustained), until a decision is rendered after a hearing, *unless:*

> "(A) *A determination is made at the hearing that the sole issue is one of State or Federal law or policy, or change in State or Federal law and not one of incorrect grant computation, * * *"* (Emphasis supplied.)

Similarly, subsection (a)(7) of the regulation provides in material part:

[825]

"(7) A State may provide that a hearing request made after the date of action (but during a period not in excess of 10 days following such date) shall result in reinstatement of assistance to be continued until the hearing decision, *unless at the hearing it is determined that the sole issue is one of State or Federal law or policy.* In any case where action was taken without timely notice, if the recipient requests a hearing within 10 days of the mailing of the notice of the action, *and the agency determines that the action resulted from other than the application of State or Federal law or policy or a change in State or Federal law,* assistance shall be reinstated and continued until a decision is rendered after the hearing." (Emphasis supplied.)

Manifestly, defendants' change in AFDC child care benefits was a matter of state policy. The regulation provides that continued assistance at existing levels is impermissible if a determination is made at a hearing that a matter of state policy is the sole issue. Although no hearing was held, it does not follow that a remedy became available to plaintiff which would have necessarily been found to be mandatorily precluded had a hearing been requested and conducted.

We hold that the trial court was without authority to direct CSD to do any of the things detailed in the order, and we therefore reverse.

Reversed.