Argued and submitted November 8, 1979, affirmed February 20, petition for rehearing denied March 18, 1980

BURKE, et al,
*Petitioner,*
*v.*
CHILDREN'S SERVICES DIVISION, et al,
*Respondents.*

(No. TC 414-115, CA 10501, SC 26253)

607 P2d 141

Gary Roberts, Legal Aid Service, Portland, argued the cause for petitioners. With him on the briefs were Michael H. Marcus and Robert B. Johnstone, Legal Aid Service, Portland.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondents. With her on the briefs were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Denecke, Chief Justice, and Holman, Tongue, Lent and Peterson, Justices. **

TONGUE, J.

---

**Holman, J., did not participate in this decision.

**TONGUE, J.**

This is a class suit in equity on behalf of families with dependent children asking for a declaratory judgment that defendants had improperly terminated a program for federally funded payments to them and for an order requiring the resumption of such payments. On a motion by the plaintiffs for partial summary judgment the trial court: (1) ordered the defendants to resume making child care payments on behalf of the plaintiffs in accordance with policies in effect prior to February 15, 1975; (2) held that the plaintiffs were entitled to judgment against defendants in the amounts by which their net available incomes were reduced by the Children's Services Division's discontinuance of its payment program on that date; and (3) ordered the defendants to identify the class members, determine the amounts due them, remit those amounts to the class members, and account to the court for all class members who could not be located. The Court of Appeals reversed, holding that under the circumstances of this case the trial court did not have authority to grant the relief embodied in its order. *Burke v. Children's Services Division,* 39 Or App 819, 593 P2d 1262 (1979). We allowed plaintiffs' petition for review because this case raises significant issues of administrative law and of the relief available for improper action by administrative agencies.

This case arises from a decision by the Division (CSD) to terminate, because of a projected shortage of funds, a program of direct payments to providers of child care for certain recipients of Aid to Families with Dependent Children (AFDC). Plaintiff Burke, whose child care payments had been made by CSD under the program, received notice of its termination on February 15, 1975, the date the change in policy went into effect. On February 16, 1975, the Public Welfare Division of the Department of Human Resources adopted rules providing that child care expenses paid by recipients would be taken into account in computing the

amount of AFDC grants. The combined effect of these two changes in policy was to reduce plaintiff Burke's net available income because the amount of the increase in her AFDC grant was less than the cost of her child care which had been paid by CSD.

On March 20, 1975, plaintiff Burke filed this lawsuit on behalf of herself and others similarly situated. On March 25 CSD adopted a temporary rule terminating its day care payment program, but has never, so far as the record shows, adopted a permanent rule to that effect.

Upon a prior appeal the Court of Appeals held that the termination of the benefit program could not be accomplished by internal management directive, ORS 183.310(7)(a), but must be done by the promulgation of a rule according to the procedures prescribed in ORS 183.335, including notice of the intended action and opportunity for interested persons to present their views. *Burke v. Children's Services Division*, 26 Or App 145, 552 P2d 592 (1976). The defendants did not seek review of that decision.

CSD's temporary rule of March 25, 1975, was adopted without the notice and comment procedures described above. Subsection (2) of ORS 183.335 provided at that time that a temporary rule could be adopted without prior notice and opportunity for comment if

"* * * an agency finds that its failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned, and sets forth the specific reasons for its finding * * *."[1]

Effective May 16, 1975, CSD repealed its first temporary rule and adopted in its place a second temporary rule to the same effect insofar as it affected persons of plaintiffs' class.[2] Both rules, as filed with the Secretary of State, were accompanied by statements intended to meet the requirements of ORS 183.335(2), quoted

---

[1] These provisions are now found in subsection (5) of the statute.

[2] The purpose of the replacement rule was to make changes with respect to other AFDC recipients whose rights are not involved in this case.

above. Temporary rules expire by force of statute 120 days after their adoption. ORS 183.335.

Plaintiffs contend that because CSD has never taken any steps to effect a permanent repeal of its day care payment program after providing the required notice and opportunity to be heard, the trial court properly ordered the defendants to pay restitution in the amounts by which their net incomes have been reduced to date by the termination of the program and also to resume making such payments.

The Court of Appeals found it unnecessary to decide whether, as a general proposition, the trial court had the power to do either of these things. Instead it held that it was not authorized to do so under the facts of this case for two reasons. First, the original benefit program had not been embodied in a validly promulgated prior rule. Second, CSD's program was replaced, the day after its termination, by a substitute program administered by another agency. (39 Or App at 823). In our opinion, neither reason will support the Court of Appeals' conclusion.

*An agency's failure to employ proper procedures when adopting a rule does not eliminate the need to employ proper procedures when repealing it.*

Prior to 1977,[3] ORS 183.310(7) defined a "rule" as:

"* * * any agency directive, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedures or practice requirements of any agency. The term includes the amendment or repeal of a prior rule * * *."

The statute goes on to list certain exceptions to the broad language of this definition, but none of them are applicable here. We need not in this case explore the outer reaches of the statutory definition. Certainly the original "directive" or "statement" adopting CSD's day care payment program, whatever its precise form and

---

[3] A minor amendment in that year, 1977 Or Laws ch 798 § 1, has no bearing on the issues in this case.

whatever informality attended its promulgation, constituted an implementation of agency policy within the meaning of the definition and was therefore a rule.

It is true that a rule may be declared by a court to be invalid if it was adopted without the proper procedures. *See* ORS 183.400. In the absence of such a declaration, however, it remains an effective statement of existing practice or policy, binding on the agency, until repealed according to procedures required by the Administrative Procedures Act. An agency may not rely on its own procedural failures to avoid the necessity of compliance with its rules.

*The rules adopted by another agency did not constitute a proper repeal of CSD's program.*

Defendants contend that the adoption of a substitute benefit program by the Public Welfare Division (now the Adult and Family Services Division, 1977 Or Laws ch 267 § 5) effectively terminated the CSD program without the necessity of CSD adopting a permanent rule to that effect. The substitute program was embodied in two temporary rules which were later promulgated as permanent rules effective May 25, 1975. Or Adm Rules 461-04-515-516.[4]

---

[4] Or Adm Rules 461-04-515 - 516 provide:

461-04-515: "Personal work expenses include costs directly connected with employment. These are income tax deductions or other withholdings from wages authorized by law, union dues, allowances for transportation to and from work, child care expenses, employment allowance, and expenses of a similar nature. Personal work expenses are a deduction from gross income and no additional payment is made for these item. [sic]
"Statutory Authority: ORS 411.060, 412.025, 412.520, 413.009, and 418.045.
"Hist: Filed and Eff. 6-30-71 as PWC 612 Amended 7-1-74 by PWC 678B, Eff. 7-25-74 Amended 1-27 75 by PWC 709 (Temp), Eff. 2-16-75 Amended 4-30-75 by PWC 720, Eff. 5-25-75"

461-04-516: "Reasonable and necessary work related child care expenses shall be allowed as personal work expenses for employed ADC recipients. Child care expenses shall be used to determine initial eligibility as well as the amount of the ongoing grant.
*(Continued on following page)*

The agency ultimately responsible for the provision of day care assistance to AFDC recipients is the Department of Human Resources. That department is directed by ORS 184.750 to provide services relating to "public assistance, children and families" through its various divisions including CSD and the former Public Welfare Division. It has been designated by the legislature as the recipient of all federal funds provided for such services. ORS 184.750(4).

Under the applicable federal regulation, federal funds may be used for child care for AFDC recipients in the form of either direct payments to providers or increased assistance grants. 45 CFR 220.61(e)(11). The defendants argue that through the change in the rules of the Public Welfare Division and the termination, at the same time, of the CSD payment program the Department of Human Resources, the responsible agency, was simply exercising its authority to change from one permissible method of providing child care services to another permissible method.

Plaintiffs do not dispute the authority of the Department of Human Resources to make such a choice.[5] They challenge only the procedure by which its accomplishment was attempted. We need not consider whether such a change could have been accomplished by a rule adopted by the Department of Human Resources itself, or whether an attempt by the Public Welfare Division, by a valid rule, to terminate a

*(Continued from previous page)*
"Day care programs provided by the Children's Services Division are considered a prior resource for employed ADC applicants. If Day Care is available in these situations, child care shall not be allowed as a work expense."

[5] Defendants' position in this case poses, by implication, the problem of whether CSD or the Department of Human Resources is the agency responsible for adopting the rules which initiate and terminate programs of this kind. *See McPherson v. Employment Division*, 285 Or 541, 546, 591 P2d 1381 (1979). Because of the way in which we dispose of this case, it is not necessary for us to address that issue.

program previously administered by CSD could ever be effective.[6]

Neither method of change was attempted in this case. The rules of the Public Welfare Division upon which defendants rely do not purport to terminate the CSD program. They provide only that child care expenses will be taken into account in determining the amount of assistance grants to AFDC recipients except in situations where child care programs are provided by CSD. They do not specify what those situations are or will be in the future. By their terms they simply do not accomplish what the Court of Appeals, in the first appeal of this case, held can be accomplished only by the proper adoption of a rule.

Because we conclude that neither CSD's failure to initiate the child care payment program with proper rule-making procedures nor the adoption by the Public Welfare Division of the rules discussed above obviated the need for CSD to terminate the program by rule, we must consider the more general questions of the trial court's authority which the Court of Appeals did not find it necessary to reach.

*The plaintiffs may not have a money judgment in this proceeding.*

The trial court awarded monetary relief, although the prayer of the complaint specifically requested only a declaratory judgment that the program had not been properly terminated and an order requiring the resumption of the payments. The complaint also prays, however, for "such other and further relief as the Court may deem equitable." Defendants have not contended that the monetary award of damages is beyond the scope of the complaint. *See Dennison v. Doreen,* 281 Or 89, 95-96, 573 P2d 1242 (1978); *Kerschner v. Smith,* 121 Or 469, 473-74, 236 P 272, 256 P 195 (1927).

The defendants contend that the circuit court was without authority to award money damages because

---

[6] Both CSD and Adult and Family Services, formerly the Public Welfare Division, have statutory rule-making power. ORS 418.005; 411.116.

the Oregon APA makes no provision for the award of damages for failure to comply with the Act's rulemaking provisions. We hold that monetary relief cannot be granted in this proceeding.

At the time this case was filed the APA authorized judicial review of agency action in several ways. Two of them are clearly not involved in this case: judicial review of an agency's declaratory ruling[7] and review by the Court of Appeals of an order in a contested case.[8] Two other possibilities must be considered here. One is a declaratory judgment proceeding to determine the validity of a rule, authorized by ORS 183.400. The other is the review of a final order other than in a contested case. *See* ORS 183.480. At the time this case was filed, proceedings of both kinds were within the jurisdiction of the circuit court.[9]

Although the question is not directly addressed by the parties, their briefs appear to be written on the assumption that this is a proceeding for a declaratory judgment to determine the validity of a rule under ORS 183.400 which, at the time this suit was filed, provided:

> "(1) The validity of any rule may be determined upon a petition for a declaratory judgment thereon filed as provided by ORS chapter 28 if the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the rights, privileges or substantial interests of the petitioner. The agency shall be made a party to the proceeding. The declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question, but not when the petitioner is a party to an order or a contested case in which the validity of the rule may be determined by a court."

It may seem incongruous, at first blush, for plaintiffs to initiate a proceeding under this section when the

---

[7] Authorized by ORS 183.410.

[8] Authorized by ORS 183.480 and .482.

[9] See the 1973 provisions of ORS 183.480(6) and ORS 183.400.

essence of their complaint is that the defendants never attempted to adopt the required rule at all. However, CSD's announcement of the termination of the payment program falls within the statutory definition of a rule which we have quoted above at page 537. It is appropriate, then, to challenge the validity of that announcement by a proceeding under ORS 183.400. Actions by the trial court in this case are consistent with treating this case as a proceeding under ORS 183.400 and inconsistent with treating it as an attempt to obtain review of an order under ORS 183.480. We adopt, therefore, the apparent understanding of the parties and the trial court and treat the case as one brought under the terms of ORS 183.400.[10]

The 1973 version of the statute, in effect when this case was filed, did not authorize any relief other than declaratory relief. It provided that upon petition for a declaratory judgment the validity of a rule "may be determined" and described certain circumstances under which "[t]he declaratory judgment may be rendered." Plaintiffs argue, however, that the legislative authority for additional relief in such a proceeding may be found in the provisions of ORS chapter 28, the Uniform Declaratory Judgments Act, to which ORS 183.400 at that time referred.

ORS 28.080 then, as now, provided:

"Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application thereof shall be by petition to a court having jurisdiction to grant the relief * * *."

This provision authorizes coercive and monetary relief in actions or suits for declaratory judgments. *Lowe v. Harmon*, 167 Or 128, 136, 115 P2d 297 (1941). It does not appear, however, that the legislature intended, by its provision in ORS 183.400(1) that a petition to have the validity of a rule determined may be "filed as

---

[10] Defendants have not contended that plaintiff Burke is a "party to an order" and thereby precluded from bringing such an action. See the definition of an order in ORS 183.310(4).

provided by ORS chapter 28," to incorporate that chapter in its entirety, including the provisions for additional relief in ORS 28.080. The relief authorized by ORS 183.400 was solely declaratory.

The Administrative Procedures Act has, however, been amended since this case was filed. ORS 183.400(1), as amended by 1975 Or Laws ch 759 § 9, now provides:

"The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases * * *."

We have recently expressed our uncertainty as to just what is meant by this provision. *See Megdal v. Oregon State Board of Dental Examiners*, 288 Or 293, 605 P2d 273 (1980), at footnote 24.[11] In contrast with the earlier version, which provided for the determination of validity upon a petition "*filed* as provided by ORS chapter 28," the amended statute provides that validity may be "*determined * * * in the manner provided* for review of orders in contested cases." It is at least arguable that the "manner provided" for such review includes the remedies which the court is authorized to grant.

In 1979 the legislature added the following provision to the Administrative Procedures Act:

"The reviewing court's decision under ORS 183.482 [review of contested cases] or 183.484 [review of orders other than contested cases] may be mandatory, prohibitory, or declaratory in form, and it shall provide whatever relief is appropriate irrespective of the original form of the petition. The court may:

"(a)  Order agency action required by law, order agency exercise of discretion when required by law, set aside agency action, remand the case for further

---

[11] Our uncertainty arises because many of the statutory procedures for review of contested cases have no readily discernable application to the determination of the validity of a rule. Others could apply, but it is not clear whether the legislature intended that they do so. See generally ORS 183.482.

agency proceedings or decide the rights, privileges, obligations, requirements or procedures at issue between the parties; and

"(b) Order such ancillary relief as the court finds necessary to redress the effects of official action wrongfully taken or withheld." 1979 Or Laws ch 593 § 27(1).

Paragraph (b) clearly authorizes monetary relief in proceedings to review orders if the court finds that such relief is "necessary to redress the effects of official action wrongfully taken or withheld." It is less clear whether the legislature intended also to authorize monetary relief in proceedings to review the validity of a rule. If it did, we would be faced with the additional question whether the legislature intended paragraph (b), insofar as it authorizes monetary relief, to apply to cases which were pending on appeal or review on its effective date. We do not have to reach that issue, however, because we conclude that the 1975 and 1979 amendments do not authorize monetary relief in proceedings to determine the validity of a rule.

ORS 183.400(1) as amended in 1975 still provides that the purpose of the proceeding is to determine the validity of a rule. The 1979 amendments made no changes in that subsection. The 1979 provisions which we have quoted above refer expressly to the statutes providing for review of orders, but not to ORS 183.400(1). The 1979 legislation does provide that the court "shall provide whatever relief is appropriate regardless of the original form of the petition," but this directive is limited by the terms of the statute to proceedings for the review of orders.

Review of contested cases is, with limited exceptions, on the record made before the agency. ORS 183.482(5). Review of orders other than in contested cases originates in the circuit court and the record is made there. ORS 183.484. Since the effective date of the 1975 amendment to ORS 183.400(1), a proceeding to determine the validity of a rule originates with a

[544]

petition filed in the Court of Appeals. It does not appear that the legislature contemplated that the kind of factual record necessary to determine contested issues of fact such as the extent of damage caused by adoption or enforcement of an invalid rule would be made before that court. Neither the 1975 nor the 1979 amendment contains provision for making such a record.

This may not be conclusive of the legislative intent. If the 1979 amendment is applicable to proceedings under ORS 183.400(1) the Court of Appeals could, under paragraph (a), order the agency to take evidence and make the necessary factual determinations if the rule were found to be invalid. It does, however, seem unlikely that the legislature intended to establish such a bifurcated procedure by indirection.

The validity of a rule may be determined in proceedings to review orders as well as in proceedings brought specifically to review the rule. ORS 183.400(2). Under the 1979 amendment monetary relief can be obtained, if appropriate, in such proceedings. Because the legislature has clearly provided for such relief, if appropriate, when an invalid rule forms the basis for an order, and considering the statutory language and the procedural complications we have noted above, we conclude that the legislature did not intend to provide for monetary relief in proceedings under ORS 183.400(1) to determine the validity of a rule.

Plaintiffs rely on a number of federal cases in which monetary awards were based on violations of the federal APA, although the federal act contains no specific authority for such relief. *Dean v. Butz,* 428 F Supp 477 (D Haw 1977); *Aiken v. Obledo,* 442 F Supp 628 (ED Cal 1977); *Lewis v. Weinberger,* 415 F Supp 652 (D NM 1976); *Saint Francis Memorial Hospital v. Weinberger,* 413 F Supp 323 (ND Cal 1976). In none of these cases does it appear that the court's authority to grant monetary relief was challenged, and in none of

the opinions is any authority cited. Other federal courts have concluded that the APA does not authorize monetary relief. *See, e.g., Armstrong & Armstrong, Inc. v. United States*, 356 F Supp 514, 521 (ED Wash 1973), *aff'd* 514 F2d 402 (1975); *Hooper v. United States*, 331 F Supp 1056, 1057 (D Conn 1971). We find nothing in the cases cited by plaintiffs which is helpful to us in the construction of the Oregon APA.

Plaintiffs also contend that they may obtain damages under the provisions of ORS 30.260-.300, the tort claims act. In support of this position they cite *Urban Renewal Agency v. Lackey*, 275 Or 35, 38, 549 P2d 657 (1976), in which this court said:

> "* * * As a general rule * * * any breach of a legal duty resulting in damages, other than those duties created by contract, is a tort, whether that duty is imposed by the common law or by statute."

*See also Gray v. Hammond Lumber Co.*, 113 Or 570, 576, 232 P 637, 233 P 561, 234 P 261 (1925).

Even if we assume, however, that a state agency's failure to follow required APA rule-making procedures can constitute a tort within the meaning of the tort claims act, that assumption does not assist the plaintiffs here. ORS 30.265(3)(f) retains the state's immunity from tort liability under the circumstances of this case. That statute provides:

> "Every public body and its officers and agents acting within the scope of their employment or duties are immune from liability for:
>
> "* * * * *
>
> "(f) Any claim arising out of an act done or omitted under apparent authority of a law, resolution, rule or regulation which is unconstitutional, invalid or inapplicable * * * unless such act was done or omitted in bad faith or with malice."

CSD, when it terminated its benefit program without prior rule-making procedures, relied on the statutory exemption of internal management directives from the APA procedural requirements. The Court of

Appeals, on the first appeal in this case, held that exemption to be inapplicable but there is no showing that the defendants' claim of its applicability was made maliciously or in bad faith. The case falls squarely within the quoted immunity provisions.

Plaintiffs also rely on *Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976), in which we held that a state employee who was discharged without the notice and opportunity for hearing required by the Fourteenth Amendment to the United States Constitution was entitled to back wages and other benefits until his employment was properly terminated. *Tupper* came before the appellate courts for review of an administrative order in a contested case. We held that we had the power to order the reviewing agency, PERB, to award back wages, relying in part on the statutory powers of the courts when reviewing contested-case orders and in part on the "constitutional nature of the deprivation involved." 276 Or at 665, note 5.

In this case *Tupper* could be relevant only to plaintiffs' contention that they were entitled to advance notice of CSD's proposed termination of the program and an opportunity to comment on that proposal by virtue of the due process clause of the Fourteenth Amendment. They have not, however, cited us to any decisions by the United States Supreme Court which support the conclusion that affected persons are constitutionally entitled to notice and an opportunity to be heard before a state agency changes a policy of general rather than individualized application. The cases upon which they rely deal with adjudicative-type decisions in individual cases. *Board of Regents v. Roth,* 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972); *Goldberg v. Kelly,* 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970).

Such guidance as we find in the decisions of the United States Supreme Court indicates that there is no such due process right. *See Bi-Metallic Invest. Co. v.*

*State Bd. of Equalization*, 239 US 441, 445, 36 S Ct 141, 60 L Ed 372 (1915), cited with apparent approval in recent decisions including, *e.g., New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 US 96, 99 S Ct 403, 58 L Ed 2d 361, 375 (1979); *United States v. Florida East Coast R. Co.*, 410 US 224, 245, 93 S Ct 810, 35 L Ed 2d 223 (1973). *Tupper* is not in point.

*Injunctive and declaratory relief.*

The injunctive relief awarded by the trial court presents a different problem. Defendants' objection with respect to that relief goes not to the trial court's power to issue an injunction, but to the content of the injunction that was issued. They argue that the trial court's order "substituted the court's judgment for that of the agencies in determining which of the authorized procedures for paying for day care should have been adopted."

If the language of the trial court's order is objectionable on that ground, it is only because the order did not expressly state what was implicit in the trial judge's reasoning as disclosed by his opinion letter: that CSD was obliged to resume making child care payments on the date stated in the order only if it had not, in the meantime, adopted a valid rule terminating the payment program. The objection could be met by modification of the trial court's order to include that qualification. That would, however, leave unresolved the question of the trial court's authority to provide injunctive relief in this proceeding. The parties have not addressed that issue, and we do not believe it is necessary to resolve it at this time.

Plaintiffs are, as we have shown above, entitled to a declaration that CSD's termination of the child care payment program was ineffective because CSD did not properly adopt a rule to that effect. We will not assume that the defendant agencies of the State of Oregon will, in the absence of an injunction, refuse to follow the law as we have stated it. In this case declaratory relief is sufficient. *Vermont Salvage Corp. v. Village of*

[548]

*St. Johnsbury,* 113 Vt. 341, 34 A2d 188, 200 (1943); Borchard, *Declaratory Judgments, supra,* at 438 and 967.

In summary, then, we hold that under the relevant provisions of the APA, CSD could terminate the benefit program which it administered prior to February 15, 1975, only by proper promulgation of a rule to that effect. We also hold that the trial court was not authorized to enter a money judgment in this proceeding. Finally, we hold that an injunction is not necessary in this case.

Although plaintiffs were entitled only to declaratory relief, the trial court's order does not in terms include a declaration of the invalidity of CSD's action. Plaintiffs, however, have not complained about that omission. In view of what we have said in this opinion, we believe that it would serve no purpose to remand the case for entry of a formal declaration to the same effect by the trial court.

For the reasons stated in this opinion, the Court of Appeals properly reversed the order by the trial court in this case.

The decision of the Court of Appeals is affirmed.