**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ASW, Individually and as
Guardian ad litem for MSW and
OSW, minors; SSW; ALC,
Individually and as Guardian ad
litem for SRC and JSC, minors;
JKC; JSS, Individually and as
Guardian ad litem for BKS, a
minor; SDS; CEW,
            *Plaintiffs-Appellants,*

            v.

STATE OF OREGON, by and through
its Department of Human
Services; JEAN I. THORNE, in her
official capacity as Director,
Oregon Department of Human
Services,
            *Defendants-Appellees.*

No. 03-35950

D.C. No.
CV-03-06038-ALA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted
May 2, 2005—Portland, Oregon

Filed September 13, 2005

Before: Procter Hug, Jr., A. Wallace Tashima, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

13141

## COUNSEL

Maria F. Ramiu (argued) and Alice Bussiere, Youth Law Center, San Francisco, California, and Arthur C. Johnson and Dennis M. Gerl, Johnson, Clifton, Larson & Corson, PC, Eugene, Oregon, for the plaintiffs-appellants.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General and David E. Leith, Assistant Attorney General (argued), State of Oregon, Salem, Oregon, for the defendants-appellees.

## OPINION

CLIFTON, Circuit Judge:

Plaintiffs are parents of adopted children with special needs[1]

---

[1]Children with special needs include, *inter alia*, a child who has a documented medical, physical, mental, or emotional condition, a history of

who receive adoption assistance payments from the State of Oregon. They appeal the district court's dismissal of their class action lawsuit under 42 U.S.C. § 1983, which alleged several violations of their statutory rights under the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620 *et seq.* (the "Act"), as well as their right to due process prior to reduction of their adoption assistance payments. Defendants, the State of Oregon and the Director of the Oregon Department of Human Services (together, "Oregon" or the "State"), moved to dismiss the action asserting that Plaintiffs failed to state a claim as a matter of law. The district court granted the State's motion. Because we conclude 42 U.S.C. §§ 671(a)(12) and 673(a)(3) create federal rights enforceable through a § 1983 cause of action, we reverse.

## I. BACKGROUND

The Adoption Assistance and Child Welfare Act of 1980 established a program of federal payments to participating states to provide funds for financial assistance to aid families adopting special needs children out of foster care. 42 U.S.C. §§ 670-76. The State of Oregon accepts funds from the federal government under this program and thus obligates itself to abide by the federal requirements.[2] Accordingly, Oregon must enter into a binding written agreement with each pair of adoptive parents. 42 U.S.C. §§ 673(a)(1) & 675(3). The amount each family receives in adoption assistance payments "shall take into consideration the circumstances of the adopting parents and the needs of the child being adopted, and may be readjusted periodically, with the concurrence of the par-

---

abuse, neglect or other identified predisposing factor that places the child at risk for future problems and need for treatment, is a member of a sibling group which will be placed together and is difficult to place because there are three or more children, is a member of an ethnic/racial/cultural minority, or is eight years of age or older. Or. Admin. R. 413-130-0020.

[2]Oregon's Adoption Assistance Program is codified at Or. Admin. R. 413-130-0000 *et seq.*

ents" if the circumstances of the parents or the needs of the child change. § 673(a)(3). Additionally, the federal statute provides that each grant recipient is entitled to a fair hearing before the applicable state agency to challenge any claim for benefits that "is denied or is not acted upon with reasonable promptness." § 671(a)(12).

The State sent a form letter in December 2002 to all families in Oregon receiving adoption assistance payments to inform them that because of budgetary shortfalls their payments would be reduced 7.5%. The form letter asked the families to agree to the reduction or risk having their adoption assistance payments terminated. The families were also informed that they would not be entitled to individual hearings to challenge the reductions. Although the families did not agree to the reductions, their adoption assistance payments were not terminated. The payments were, however, uniformly reduced by 7.5% beginning in February 2003. The State selected 7.5% as the amount of the reduction to coincide with its decision to reduce foster care maintenance payments by that same amount, also effective February 2003.

Plaintiffs brought a 42 U.S.C. § 1983 class action against the State, asserting, *inter alia*, that they have a federal right to have the amount of their adoption assistance payments based on an individualized assessment of their special needs and circumstances, as well as a federal right to have a fair hearing before an administrative agency to contest reductions in their payments. Plaintiffs claimed these rights were violated by the State's unilateral action.[3] Plaintiffs sought a declaration of their rights and an injunction to prevent the State from uniformly and unilaterally reducing their adoption assistance payments and denying them the opportunity to challenge the reductions in a "contested case hearing." The district court concluded that the rights Plaintiffs claimed the State

---

[3]Plaintiffs' complaint also included a breach of contract claim. That cause of action is not before us.

violated were not enforceable through a § 1983 cause of action and granted the State's motion to dismiss. Plaintiffs timely appealed.

## II.  MOOTNESS

Oregon argues that Plaintiffs' claims are moot because a state administrative rule, Or. Admin. R. 413-130-0127, which became effective November 1, 2003, increased monthly adoption assistance payments by 8.108%, thus making the amount of the monthly payments slightly larger than they had been before the reduction nine months earlier. Mootness is a question of law that we review de novo. *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1133 (9th Cir. 2004). We conclude the case is not moot because, although the increase authorized by rule 413-130-0127 exceeded the 7.5% reduction, it did nothing to alter the provisions of rule 413-130-0125 challenged here.

**[1]** "A case loses its quality as a 'present, live controversy' and becomes moot when there can be no effective relief." *San Lazaro Ass'n v. Connell*, 286 F.3d 1088, 1095 (9th Cir. 2002). Because Plaintiffs brought suit under *Ex parte Young*, 209 U.S. 123 (1908), they cannot seek monetary redress for a past harm and thus their case is moot unless they are in a position to benefit from prospective relief. *See Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002); *Taylor v. Westly*, 402 F.3d 924, 929-930 (9th Cir. 2005) (explaining that the Eleventh Amendment generally "shields state governments from money judgments in federal courts, and from declaratory judgments against the state governments that would have the practical effect of requiring the state treasury to pay money to claimants").[4] The State argues that because

---

[4]We do not believe that Plaintiffs' request for a declaration that Or. Admin. R. 413-130-0125 violates Title IV-E of the Social Security Act would effect an " 'end run' around . . . *Edelman v. Jordan*, 415 U.S. 651 (1974)." *Green v. Mansour*, 474 U.S. 64, 73 (1985). The requested declar-

there is no ongoing violation of federal law, there is no valid form of relief Plaintiffs can be awarded. The cases Oregon relies on, however, are inapposite. *See, e.g.*, *Green*, 474 U.S. at 73 (holding that plaintiff's claim was moot where Congress amended the relevant statute clarifying, and thereby resolving, the controversy that had arisen due to ambiguities in the original statute); *In re Investigation Pursuant to the Comprehensive Envtl. Response*, 820 F.2d 308, 311-12 (9th Cir. 1987) (dismissing the case because Congress enacted substantial amendments to the relevant statutory provisions while the case was on appeal, the court reasoned that "[w]here new legislation represents a complete substitution for the law as it existed . . . arguments based upon the superseded part are moot"). By contrast, Or. Admin. R. 413-130-0127 did not repeal, substitute, or even amend the challenged administrative rule in any way. Accordingly, its adoption did not eliminate Plaintiffs' claim for relief.

**[2]** Moreover, we are "particularly cautious when a case has become moot because the defendant has voluntarily ceased to pursue the challenged course of action." *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1194 (9th Cir. 2000). Here, not only was the increase in benefits voluntary, Oregon explicitly left the mechanism in place whereby it can uniformly reduce adoption assistance payments at any time in the future. The posture of this case therefore contrasts sharply with *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994), where the relevant statute had been repealed and the plaintiffs simply feared the possibility that the state would continue to discriminate under the new statute. It is not a mere "theoretical possibility" that Oregon could

---

atory relief addresses the methodology for determining adoption assistance payments under 42 U.S.C. § 673(a) and does not resolve Oregon's liability for any withheld funds. As the State concedes, should Plaintiffs seek monetary damages, they would need to bring individual contract claims against the State to enforce the terms of their binding agreements.

adopt an administrative rule providing for uniform reductions in adoption payments. Oregon already has such a rule, which it purposely chose not to repeal. Indeed, based on its arguments before this Court, it is probable that when faced with a similar budgetary crisis, Oregon would again consider uniformly and unilaterally reducing adoption assistance payments. In light of that very real possibility, Oregon has not met its "heavy burden of persuading" the court that "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000).

**[3]** Because Plaintiffs' challenge to Or. Admin. R. 413-130-0125 is not rendered moot by the adoption of Or. Admin. R. 413-130-0127, we proceed to a discussion on the merits.

## III.  MERITS

We review de novo the district court's decision to grant the State's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Decker v. Advantage Fund Ltd.*, 362 F.3d 593, 595-596 (9th Cir. 2004). We accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party. *See Decker*, 362 F.3d at 595; *Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).

**[4]** Plaintiffs correctly point out that legislation enacted pursuant to Congress's spending power can give rise to enforceable rights under 42 U.S.C. § 1983. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 280-81 (2002) (explaining why the two cases in which it had previously found enforceable rights, *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418 (1987) and *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990) were correctly decided).[5] To sustain a § 1983 cause of

---

[5]*See, e.g.*, *Price v. City of Stockton*, 390 F.3d 1105, 1114 (9th Cir. 2004) (42 U.S.C. § 5304(k) provides individuals displaced by federally funded

action, Plaintiffs must demonstrate that they are seeking redress for the violation of a federal right, not merely a violation of federal law. *Id.* at 283. In other words, Plaintiffs must establish either that they have a federal right under 42 U.S.C. § 673(a)(3) to individualized adoption assistance payment determinations, or that under § 671(a)(12) they have a federal right to a fair hearing before the State agency to challenge reductions in their adoption assistance payments.

**[5]** The Supreme Court has identified three factors, which if present, establish a rebuttable presumption of an enforceable federal right.[6] *Blessing v. Freestone*, 520 U.S. 329, 341 (1997). A federal statutory provision creates an individual right if (1) Congress intended the provision in question to benefit the plaintiff;[7] (2) the plaintiff demonstrates that the right assertedly protected by statute is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the statute unambiguously imposes a binding obligation on the state. *Id.*

redevelopment activities with an enforceable right to benefits); *Rabin v. Wilson-Coker*, 362 F.3d 190, 201-02 (2d Cir. 2004) (42 U.S.C. § 1396r-6 creates an enforceable right to transitional medical assistance benefits); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 605-06 (5th Cir. 2004) (under 42 U.S.C. § 1396a(a)(10)(A) of the Medicaid Act plaintiff had an enforceable right to medically necessary incontinence supplies).

[6]In *Gonzaga University*, the Court acknowledged the continuing relevance of the *Blessing* test to "guide judicial inquiry into whether or not a statute confers a right." 536 U.S. at 282. *See Price*, 390 F.3d at 1109 n.4 (concluding that "the *Blessing* test still applies to claims asserted under Section 1983").

[7]Clarifying the first prong of the *Blessing* analysis, in *Gonzaga University* the Court explained that if Congress intends to confer individual rights on a class of beneficiaries, it must do so unambiguously through "explicit right-or duty-creating language" that is "phrased in terms of the person benefitted." 536 U.S. at 283-84, 284 n.3.

## A.   Statutory Right to Individualized Payment Determinations

Our initial inquiry is whether the text and structure of the Act contains the requisite "rights-creating" language that evinces a congressional intent to confer an entitlement to individualized payment determinations. *Price*, 390 F.3d at 1110. We conclude that it does.

[6] Section 671 requires Oregon to have a plan that mandates that adoption assistance will be provided in accordance with § 673. Section 673(a)(3) requires that the amount of adoption assistance payments be determined "through agreement between the adoptive parents and the State . . . which . . . take[s] into consideration the circumstances of the adopting parents and the needs of the child being adopted." Furthermore, the amount of the payment may only be readjusted "with the concurrence of the adopting parents, depending upon changes" in the circumstances of the adopting parents and the needs of the child.[8] This language evinces a clear intent to create a federal right. *See Price*, 390 F.3d at 1111. The statutory text unambiguously requires the State to engage in an individualized process with each family that takes into account their unique requirements in determining the amount of their adoption assistance payments throughout the duration

---

[8]This assumes that the parents continue to qualify to participate in the adoption assistance program. Additionally, Oregon is correct that the amount of the adoption assistance payment is limited under § 673(a)(3) in that it cannot "exceed the foster care maintenance payment which would have been paid during the period if the child with respect to whom the adoption assistance payment was made had been in a foster family home." It is the methodology of calculating the payments, however, not the particular amount of the payment, that Plaintiffs challenge here. Furthermore, Plaintiffs contend, and the State does not dispute, that at no time did their adoption assistance payments exceed the applicable foster care maintenance payments, even after the reduction in foster care payments made by the State in February 2003. Accordingly, the limiting language contained in § 673(a)(3) is not applicable.

of their participation in the program.[9] Just as "Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 create individual rights because those statutes are phrased with an *unmistakable focus* on the benefitted class," *Gonzaga Univ.*, 536 U.S. at 284,[10] these particular statutory provisions are unambiguously framed in terms of the specific individuals benefitted and contain explicit duty creating language. Thus, this case is analogous to *Price v. City of Stockton*, where, in concluding that 42 U.S.C. § 5304 created enforceable individual rights, we emphasized that the statutory text "require[d] that benefits be provided to particular persons . . . evinc[ing] a clear intent to create a federal right." 390 F.3d at 1111. *See also Rabin*, 362 F.3d at 201 (the phrase "each family" suggests an individualized as opposed to an aggregate focus); *Hood*, 391 F.3d at 603 (a statute that provides medical assistance to all individuals who meet certain eligibility requirements "is precisely the sort of 'rights-creating' language identified in *Gonzaga*").

[7] The second and third prongs of the *Blessing* test are also satisfied. The right to individualized payment determinations that reflect the unique circumstances of the parents and the special needs of their adopted child is a concrete and objective

---

[9]Oregon's argument that it would be economically inefficient to engage in individualized determinations for recipients of adoption assistance payments whenever it lowered its foster care maintenance payments is irrelevant. Unlike foster care maintenance payments, codified in a standardized rate schedule, § 673(a)(3) explicitly creates a right to individualized payment determinations for adoption assistance payments. That right cannot be abrogated for the convenience of the State.

[10]In *Gonzaga University*, the Court emphasized that the Family Educational Rights and Privacy Act of 1974 did not speak in terms of the individual, but instead had an aggregate focus that was "not concerned with whether the needs of any particular person have been satisfied." 536 U.S. at 288. Unlike the statute in *Gonzaga University*, which was "two steps removed from the interests of the individual student" who had his personal records disclosed, *id.* at 287, the focus of the particular statutory provisions at issue here is on the individual parents and their right to individualized payment determinations.

right, the enforcement of which does not "strain judicial competence." *Blessing*, 520 U.S. at 340-41. Furthermore, there is no ambiguity as to what Oregon was required to do under § 673(a)(3) as a condition of receiving federal funding under Title IV-E. *Cf. Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 24-25 (1981) (holding that the phrases "appropriate treatment" and "least restrictive" were too vague to be enforceable as the State did not agree to any specific terms and conditions as a prerequisite to receiving federal funding); *Suter v. Artist M.*, 503 U.S. 347, 358, 363 (1992) (referencing *Pennhurst*, the Court explained that the phrase "reasonable efforts" standing alone does not provide specific information regarding "exactly what is required of States by the Act" and thus was not an enforceable individual right).

We are not persuaded by the fact that in *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003), the Eleventh Circuit reviewed a different provision of Title IV-E, namely § 671(a)(16), and concluded that it did not create the right the plaintiffs were seeking to enforce. We do not look at the Act in its entirety and determine at that level of generality whether it creates individual rights. *See Blessing*, 520 U.S. at 342-43.[11] Instead, we review only the particular statutory provision at issue.[12]

---

[11]In response to the Court's broad reasoning in *Suter*, Congress enacted 42 U.S.C. § 1320a-2, explicitly stating that simply because § 671(a)(15), the provision at issue in *Suter*, did not create an enforceable private right of action, does not mean that other provisions in Title IV-E did not create federal rights. Section 1320a-2 also overturned *Suter* to the extent the Court held that simply by virtue of being a plan requirement Congress foreclosed the possibility that the provision could create an individually enforceable federal right. *See, e.g.*, *Price*, 390 F.3d at 1113 (holding that notwithstanding the fact that the provision at issue was a plan certification requirement, based on a review of the text and structure of the legislation, Congress also intended the provision to confer an enforceable entitlement to specific benefits).

[12]The plaintiffs in *31 Foster Children* brought suit under § 675 asserting they had a right to prompt placement with permanent families and to have

Because Plaintiffs have asserted a federal right presumptively enforceable under § 1983, the burden falls on the State to rebut this presumption by showing that Congress has "specifically foreclosed a remedy under § 1983" either expressly "or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing*, 520 U.S. at 341. Section 673(a) does not explicitly foreclose a § 1983 action, therefore, the State must demonstrate that Congress created a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. *See id.*

**[8]** We begin our analysis by recognizing that we do "not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." *Price*, 390 F.3d at 1114 (quoting *Wilder*, 496 U.S. at 520). The Act provides that disputes over adoption assistance benefits may be heard before the State agency, but does not mention nor preclude federal review. 42 U.S.C. § 671(a)(12). The mere availability of administrative review mechanisms to protect Plaintiffs' interests cannot defeat their ability to invoke § 1983. *See Blessing*, 520 U.S. at 348; *Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1039 (8th Cir. 2002) (concluding that the provisions for administrative review in the Act were "not sufficiently indicative of Congress's true intent to limit the available remedies").

**[9]** Oregon cites a recent decision of the Supreme Court, *City of Rancho Palos Verdes v. Abrams*, 125 S. Ct. 1453 (2005), in which the Court held that the alternative judicial remedy Congress provided in the Telecommunications Act of

their medical and educational backgrounds provided to their caregivers as part of the case review system. 329 F.3d at 1261. There is no mention in the statutory text, however, of a right to prompt placement or to have medical and education backgrounds provided to caregivers. By contrast, § 673(3) unambiguously creates a right to individualized payment determinations. Thus, the reasoning of *31 Foster Children* is inapposite.

1996 ("TCA") precluded the petitioner from sustaining a § 1983 cause of action. Oregon argues that because Congress provided for the enforcement of adoption assistance agreements under state law, §§ 671(a)(12) and 673(a)(3) do not create rights that are enforceable under § 1983. The Court, however, explicitly rejected the proposition that the availability of a private judicial remedy conclusively establishes a congressional intent to preclude a § 1983 cause of action. 125 S. Ct. at 1459. Instead, the Court explained that the dispositive issue is whether the private remedy provided by statute is more restrictive than those available through a § 1983 action, such that the § 1983 action would function as an end run around the enforcement mechanism Congress provided. *Id.* at 1458, 1460. Observing that the enforcement mechanism provided by the TCA limited relief in ways that § 1983 did not,[13] the Court concluded that "[e]nforcement of § 332(c)(7) through § 1983 would distort the scheme of expedited judicial review and limited remedies created by [the TCA]." *Id.* at 1462.

**[10]** By contrast, the Act does not include a comprehensive enforcement mechanism incompatible with a § 1983 action. It simply provides the beneficiary with an "opportunity for a fair hearing before the State agency" to contest individual benefit claims under the Act. 42 U.S.C. § 671(a)(12). Notably, Congress did not place any temporal or remedial limitations such as those the Court considered dispositive in concluding that Congress intended the statutory enforcement mechanism in 47 U.S.C. § 332(c)(7) to be exclusive. Furthermore, Oregon's argument that § 673(a)(1), which requires the State to enter into binding agreements with adoptive parents, creates a comprehensive enforcement scheme incompatible with § 1983

---

[13]The enforcement mechanism available under the TCA (1) mandated that judicial review be sought within 30 days and the final action heard and decided on an expedited basis; (2) likely excluded compensatory damages; and (3) did not provide for attorneys' fees and costs. *Rancho Palos Verdes*, 125 S. Ct. at 1459-60.

mischaracterizes the right Plaintiffs are seeking to enforce here. Regardless of whether their contracts have been breached, Plaintiffs are seeking to enforce their right under § 673(a)(3) to individualized payment determinations, which is a federal statutory right that is not dependent on the terms of their individual contracts. And, even if Plaintiffs were able to sue on their contracts to enforce their right to individualized payment determinations, "the state-court remedy is hardly a reason to bar an action under § 1983, which was adopted to provide a federal remedy for the enforcement of federal rights." *See Wright*, 479 U.S. at 429.

**[11]** We conclude therefore that Plaintiffs may proceed with an action under § 1983 on their claim that they were entitled to individualized payment determinations. We do not comment on the merits; we merely hold that Plaintiffs' claim is not subject to dismissal for failure to state a claim.

## B.   Statutory Right to an Administrative Hearing

**[12]** Plaintiffs also contend that they have a federal right under 42 U.S.C. § 671 (a)(12) to individual hearings challenging the reduction of their adoption assistance payments.[14] We agree. Section 671(a)(12) requires that an individual, whose claim for benefits is denied or not acted upon with reasonable promptness, be given an opportunity for a fair hearing before the State agency. Applying the *Blessing* test discussed in the preceding section confirms that Congress intended to create a federal right to a fair hearing before a State agency, in that the text of the provision explicitly describes an objective individual and judicially reviewable right that is phrased in mandatory rather than precatory terms. *See, e.g.*, *Timmy S. v. Stumbo*, 916 F.2d 312, 317 (6th Cir. 1990) (holding that the Act grants foster parents an enforceable right to an administrative hearing).

---

[14]Plaintiffs contend that right was violated when Oregon issued Or. Admin. R. 413-130-0125(4), which denied them access to a "contested case hearing."

Oregon counters that 45 C.F.R. § 205.10(a)(5), made applicable to Title IV-E through 45 C.F.R. § 1355.30, defines and restricts Plaintiffs' right to a hearing. Specifically, § 205.10(a)(5) provides that a "hearing need not be granted when either State or Federal law requires automatic grant adjustments for classes of recipients unless the reason for an individual appeal is incorrect grant computation." Yet, accepting as true the facts pled in their complaint, neither State nor Federal law required automatic grant adjustments, as none of the Plaintiffs were receiving adoption assistance payments in excess of the applicable cap after the uniform reduction in foster care payments.

Oregon also argues that although Plaintiffs were denied an opportunity for a contested case hearing, they could have challenged the rule implementing the reduction through a rule hearing under Or. Rev. Stat. § 183.400.[15] Section 183.400, however, restricts the scope of the available hearing and limits the possible remedies. In particular, rules are reviewed only for compliance with the statutory provisions authorizing the rule and the rulemaking procedures followed. *See Beaver Creek Co-Op. Tel. Co. v. Pub. Util. Comm'n*, 50 P.3d 1231, 1235 (Or. Ct. App. 2002) (explaining that while "numerous individual fact situations can arise under any rule . . . judicial review of the rule as applied to each of those situations is reserved to other forums," i.e., "contested case" hearings). Moreover, monetary relief can only be sought through a contested case hearing, not a rule hearing. *Burke v. Children's Servs Div.*, 607 P.2d 141, 147-48 (Or. 1980).

**[13]** We conclude that the right to a hearing under Or. Rev. Stat. § 183.400 does not meet the requirements of a § 671(a)(12) hearing. Section 671(a)(12) falls squarely within

---

[15]Oregon's Administrative Procedures Act provides for three distinct types of hearings: hearings to challenge a rule (§ 183.400), hearings in "contested cases" (§ 183.482) and hearings in "other than contested cases" (§ 193.484).

the category of what Oregon defines as a "contested case" hearing as it invokes the application of a rule to a particular factual situation. Furthermore, as monetary relief is not available under a rule hearing, such a hearing does not satisfy the requirement for a "fair hearing" for "any individual whose claim for benefits" has been denied. Pursuant to § 671(a)(12), Plaintiffs have a right to an individualized fact-specific hearing to adjudicate their unique situation in which benefits were "denied or . . . not acted upon with reasonable promptness," resulting in monetary relief where appropriate.

## IV.  CONCLUSION

**[14]** Because it is possible that Plaintiffs could prove a set of facts in support of their claims that would entitle them to relief, we hold the district court erred in dismissing Plaintiffs' action for failure to state a claim under Rule 12(b)(6). Specifically, the district court erred in concluding that Plaintiffs do not have federally enforceable rights to individualized payment determinations and to a fair hearing before a State agency to challenge individual benefit reductions pursuant to 42 U.S.C. §§ 673(a)(3) and 671(a)(12), respectively.

**REVERSED and REMANDED**.