Argued and submitted April 20, 1988, affirmed January 11, 1989

HARTMAN,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(G4-3401-AK2720-6 (Control); CA A45545 (Control))

MOON et al,
*Petitioners,*

*v.*

ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(N2-1701-AK1413-9; CA A45546)

RODRIGUEZ,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(N2-3401-4PH341-7; CA A45547)
(Cases Consolidated)

767 P2d 94

Kent B. Thurber, Portland, argued the cause and filed the brief for petitioners.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

### DEITS, J.

Petitioners are three public aid recipients who, before July 1, 1986, had received medical assistance from Adult and Family Services Division (AFSD) under its General Assistance Medical Only (GAMO) program. They seek review of final orders terminating their benefits under that program. We affirm.

In May, 1986, AFSD notified petitioners that, effective July 1, 1986, they would no longer be eligible for the GAMO program,[1] but could apply for medical benefits under the Medically Needy program. Under the GAMO program, petitioner Hartman paid $129.30 per month to receive medical coverage; petitioners Moon paid approximately $80 per month; and petitioner Rodriguez paid $5.40. Under the Medically Needy program, petitioners must spend a certain amount for medical assistance in each six-month period[2] before receiving any benefits. The "spend down" requirement for Hartman at the time of the hearing was $763; for the Moons, $855; and for Rodriguez, $1,653.

In June, 1986, AFSD amended its rule governing eligibility for its Medically Needy program, OAR 461-05-903, to make persons in petitioners' category eligible for benefits, effective July 1, 1986. OAR 461-05-903(d). AFSD did not, however, at that time amend or repeal the provisions of OAR 461-05-910, which established petitioners' eligibility for the GAMO program. These provisions were eventually repealed, effective October 7, 1986.

■ Petitioners argue that AFSD's termination of their benefits under the GAMO program was unlawful, because the provisions of the rule which made them eligible for the program were still in effect when their benefits were terminated. However, although those provisions were in effect, the rule also then provided that "[p]ersons who can qualify for Medicaid are not eligible for [GAMO]." Medicaid eligibility is tied to eligibility for the Medically Needy program. OAR 461-

---

[1] Petitioners qualified for the GAMO program under the category of aged, blind and disabled persons who, except for their income level, would qualify for the Oregon Supplemental Income Program. OAR 461-05-910(2) (a) and (b).

[2] The six-month budget period for the Medically Needy program was reduced to a one-month period, effective February 1, 1987.

05-909(1). Therefore, because petitioners could qualify for the Medically Needy program and, thereby, for Medicaid, they were ineligible for the GAMO program.[3]

■ Petitioners argue that the amendment to the Medically Needy rules did not make them immediately eligible for benefits under that program because it was necessary to meet the "spend down" requirements before receiving benefits and, therefore, they were not immediately disqualified for GAMO. However, the GAMO rule provides that they are disqualified if they "*can* qualify for Medicaid." Petitioners do not contend that they *cannot* qualify for Medically Needy benefits and, thereby, Medicaid. Their only argument is that it will take them some time to receive benefits. Because they could qualify for Medically Needy benefits at the time of the termination of their GAMO benefits, they were not eligible for GAMO.

■ Petitioners rely on *Burke v. Children's Services Division,* 26 Or App 145, 552 P2d 592 (1976), in arguing that AFSD must have repealed or amended the GAMO rule before ending petitioners' benefits under that program. However, in *Burke,* CSD attempted to make a significant change in an agency program through the adoption of "internal management directives," rather than amendments to its administrative rules. Here, AFSD complied with the rule-making process. The agency gave notice of its proposed program change. The only defect in the process that petitioners alleged is the agency's failure to amend or repeal the GAMO rule. However, the repeal or amendment of that rule was unnecessary because, as discussed above, the amendment of the Medically Needy rule and the existing language of the GAMO rule made petitioners ineligible for the GAMO program.[4]

Affirmed.

---

[3] There are other requirements for qualification for Medicaid in addition to having Medically Needy status, but petitioners do not argue they cannot meet them.

[4] Petitioners also argue that AFSD's later amendment of the rule to eliminate persons in petitioners' category from the GAMO program was improper, because it was made retroactive to July 1, 1986. However, because we conclude that AFSD's action in July, 1986, effectively disqualified petitioners from the GAMO program, the later repeal of the rule did not affect them and, therefore, their argument is without merit.