Argued May 7, affirmed May 31, petition for rehearing denied
July 11, petition for review denied October 9, 1973

ELVRUM ET UX, *Appellants, v.* FISH COMMISSION
ET AL (No. 76444), *Respondents.*

510 P2d 593

*R. Kent Gardner,* Portland, argued the cause for appellants. With him on the briefs was B. G. Birch, Portland.

*Edward H. Warren,* Portland, argued the cause for respondents. With him on the brief were Hershiser, Mitchell & Warren, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

This is an appeal by plaintiffs in an action tried to the court for damages against the Fish Commission of the State of Oregon; Chris L. Wheeler, the state engineer; James W. Carver, the deputy state engineer; and Clayton J. Gardner, watermaster of district No. 1. The court below granted defendants an involuntary nonsuit on the ground the evidence failed to prove defendants' liability.

Plaintiffs owned and operated a trout pond in the Sandy River watershed near the Mt. Hood Highway in Clackamas County. The complaint states two separate causes of action:

(1). "* * * [T]he Defendants * * * entered upon Plaintiffs['] * * * property and wrongfully diverted the waters of Eddy Creek away from Plaintiffs' trout

pond so as to deprive Plaintiffs of their beneficial use * * * of the waters of Eddy Creek * * *.

"Plaintiffs have been wrongfully deprived of their property by Defendants * * *."

(2). Defendant Clayton J. Gardner wilfully or negligently misrepresented to plaintiffs that the use of the waters of Eddy Creek was and is restricted to those possessing a permit; and defendant Chris L. Wheeler through defendant James W. Carver wrongfully, negligently and contrary to law denied issuance of a permit applied for by plaintiffs. The only relief sought in the complaint was for damages.

The evidence showed that plaintiffs' operation consisted of a pond approximately 50-70 feet in diameter that was stocked with trout. The water for the pond was obtained by means of a four-inch pipe that carried water approximately 3,000-5,000 feet from near the headwaters of Eddy Creek on plaintiffs' property. The water flowed through the pond and out through a channel that eventually reached Cedar Creek. The amount of water flowing into Cedar Creek was not equal to the amount withdrawn from Eddy Creek. The amount of the difference was disputed.

The pipeline and pond had been constructed in 1954 and were not under permit of the state engineer pursuant to ORS ch 537.[1]

Defendant Fish Commission operates a fish hatchery on Cedar Creek downstream from plaintiffs' property. The waters of Eddy Creek flow into Beaver Creek which flows into Cedar Creek upstream from the fish hatchery. The Fish Commission has a permit

---

[1] We do not set forth the text of various provisions of the water laws (ORS chs 536-560) in this opinion because we find it unnecessary to construe them.

to appropriate water from Cedar Creek. In the fall of 1969 the Fish Commission requested that the state engineer investigate the legitimacy of all water withdrawals from the Cedar Creek watershed because the stream's flow was not sufficient to supply all of the water the Fish Commission was entitled to under its permit.

Joseph W. Miller, assistant to defendant Clayton J. Gardner, contacted plaintiffs on May 24, 1970 concerning the use of their fish pond and informed them that inasmuch as they had no permit for the use of the water they were in violation of ORS 537.130 (2). Thereafter, plaintiffs made an application to the state engineer on June 11, 1970 for a permit to appropriate water from Eddy Creek for the trout pond. On June 16, 1970 the state engineer requested of the Attorney General an opinion whether the proposed appropriation of water as described in the application of the plaintiffs came within the definition of recreational purposes as set forth in ORS 538.260. The Attorney General's reply of June 22, 1970 was essentially that the use was a commercial venture and that the application was prohibited by ORS 538.251 (4). Thereafter, the application was refused and returned to plaintiffs on July 1, 1970. On July 11, 1970 Joseph W. Miller, the watermaster's representative, went to plaintiffs' property and installed a wooden plug in plaintiffs' pipeline to prevent the further diversion of water from Eddy Creek.

Plaintiffs make five assignments of error. The first two involve discretionary rulings of the trial court. We have examined those rulings and find the court acted within the bounds of its discretion. They merit no discussion. The third involves a technical

error in designation of the order of dismissal which also merits no discussion.

Plaintiffs' fourth assignment of error questions the trial court's finding that plaintiffs' "rights" to the water of Eddy Creek were in conflict with and therefore inferior to defendant Fish Commission's water rights provided for in the permit granted by the state engineer pursuant to the water code.

Plaintiffs' fifth assignment of error relates to the trial court's holding that defendants were not liable for damages under either plaintiffs' first or second causes of action.

The first cause of action is premised on the contention that plaintiffs' rights to the water existed independently of the water code and were not in conflict with the permit rights of the Fish Commission.

Plaintiffs' second cause of action concerns the alleged negligent and wrongful denial of their application for a water permit.

The permit was denied on the ground that the use proposed by plaintiffs was prohibited by statute. Plaintiffs contend that defendants wilfully, wrongfully or negligently misinterpreted the applicable statutes in denying his application.

We do not reach a decision as to the correctness of the trial court's decision rejecting each of plaintiffs' causes on the merits. This is an action for damages sounding in tort.

ORS 30.265 provides:

"(1) Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents act-

ing within the scope of their employment or duties, whether arising out of a governmental or proprietary function.

"* * * * * *

"(3) Neither a public body nor its officers, employes and agents acting within the scope of their employment or duties are liable for injury or damage:

"* * * * * *

"(b) Because of an act done or omitted under apparent authority of a law, resolution, rule or regulation which is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice.

"* * * * * *"

The act of Joseph W. Miller in plugging plaintiffs' pipeline was an act authorized by statute. ORS 537.130 (2) provides:

"No person shall use, store or divert any waters until after the issuance of a permit to appropriate such waters."

ORS 540.040 (1) provides:

"Each watermaster:

"Shall divide the water of the natural streams, wells or other sources of supply of the surface or ground water of his district among the ditches, pumps and reservoirs taking water therefrom, according to the rights of each, in whole or in part; and shall shut and fasten, or cause to be shut and fastened, the controlling works of ditches, pumps or pipelines."

The denial of plaintiffs' application for a water permit was likewise based on the ground its issuance

was prohibited by statute; indeed, the state engineer had an Oregon Attorney General's opinion saying this was so.

Plaintiffs' two causes of action are based on the contention that the statutory authority for the acts of defendants is either unconstitutional or inapplicable. There is no claim made that if the statutes are valid and applicable plaintiffs would be entitled to damages nor do plaintiffs make any allegations of malice or bad faith on the part of defendants. In one respect the plaintiffs alleged the defendants' acts were "wrongful," and in another "wilful"; however, they never undertook under these allegations to produce evidence of malice or bad faith. Defendants are therefore immune under the terms of ORS 30.265 (3) (b). Plaintiffs have not here asked for injunctive relief to have the pipeline reopened if it were wrongfully shut, nor have they asked for a writ of mandamus to force the granting of a permit if it were wrongfully denied.

We note that trial counsel for defendants inartfully raised the defense of immunity in the proceedings below and at no point cited to the trial court or to this court the existence of the above statutory provisions. However, the fact that the trial court unnecessarily reached a decision on the merits of plaintiffs' arguments is not reason enough for our covering the same ground when there is no need to do so.

Affirmed.