Argued May 24, reversed and remanded July 26, 1976

# BURKE, *Appellant,*
## *v.*
# CHILDREN'S SERVICES DIVISION et al,
## *Respondents.*
## ·(No. 414-115, CA 5316)
### 552 P2d 592

*Richard T. Aboussie,* Legal Aid Service—Multnomah Bar Association, Inc., Portland, argued the cause for appellant. With him on the briefs was Michael H. Marcus, Legal Aid Service—Multnomah Bar Association, Inc., Portland.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were W. Michael Gillette, Solicitor General, and Lee Johnson, Attorney General, Salem.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

The issue in this case is what is an "internal management directive" which is exempt from the rulemaking provisions of Oregon's Administrative Procedures Act (APA) as distinguished from a "rule" which requires, *inter alia,* notice and hearing prior to adoption. ORS 183.310(7)(a).

Plaintiff, an employed mother of three children, is a recipient of public assistance from the Public Welfare Division (PWD) of the Department of Human Resources under the Aid to Dependent Children program. Until February 15, 1975, she was receiving additional assistance under the Aid to Dependent Children program from the Children's Services Division (CSD) of the Department of Human Resources. This additional assistance was in the form of direct payments from CSD to those who provided day care for plaintiff's children so that plaintiff could work.

In December 1974 CSD became aware of a potential budget deficit. To avoid this, direct payments for child care were terminated on February 15. At that time PWD began to allow child-care expenses as a part of its welfare grants, but in an amount lesser than the amount previously paid by CSD.

CSD sent notice to plaintiff of the termination of payments for day care on February 13. The notice was received on February 15, the effective date of the action. Plaintiff and others similarly situated were not granted an opportunity to be heard concerning the relative merits of other options available to CSD or the effect of the termination of direct day-care payments on their lives.

Plaintiff brought this suit to invalidate the action terminating direct day-care payments on the grounds (1) that the action was not taken in compliance with the Oregon APA, ORS ch 183, (2) that the action was not taken in compliance with applicable federal regulations, and (3) that the action denied plaintiff due

process of law in violation of the Fourteenth Amendment to the United States Constitution. The crux of plaintiff's complaint was that she received neither adequate notice of CSD's action nor a hearing. The trial court's conclusions of law were adverse to plaintiff on all three grounds.

■ Unless a rule is promulgated according to statute, ORS 183.335, and filed with the Secretary of State, ORS 183.355, it is not effective. ORS 183.310(7)(a) defines "rule":

> " 'Rule' means any agency directive, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include:
>
> "(a) Internal management directives, regulations or statements between agencies, or their officers or their employes, or within an agency, between its officers or between employes, unless hearing is required by statute, or action by agencies directed to other agencies or other units of government."

The trial court concluded, and defendants argue here, that the action taken by CSD on February 15 was an "internal management directive" and therefore exempt from the rule-making provisions of the APA.

No attempt has previously been made in Oregon to define "internal management directive." It is a term which does not lend itself to precise definition. Consequently, its meaning can best be established through a series of illustrations.

■ The federal Administrative Procedures Act, 5 USC § 1002 (1958), contained exemptions from the requirement that every agency publish in the Federal Register descriptions of its organization and all substantive rules adopted by it. At the time the federal cases discussed below were decided, publication was not required "to the extent that there is involved * * * *any matter relating solely to the internal management*

*of an agency* * * *." (Emphasis supplied.)[1] The phraseology of this exemption from the publication requirement is roughly equivalent to Oregon's exemption of internal management directives" from the rule-making provisions of our APA.

In *United States v. Hayes,* 325 F2d 307 (4th Cir 1963), the district court held that the Comptroller General's designation of one of his employes to certify copies of records in the General Accounting Office was invalid because it was not published in the Federal Register. The Court of Appeals held that publication was not required because the Comptroller General's action was a "matter relating solely to the internal management of an agency." The court stated:

> "To be within the publication requirement of § 3(a), a step in the agency's operation must affect private or public interests more directly than does the attestation of its records. It must, too, be of such a nature that knowledge of it is needed to keep the outside interests informed of the agency's requirements in respect to any subject within its competence, as a guide in the conduct of their day-to-day affairs, and to instruct them in regard to the presentation to the agency of any such subject for impartial consideration or action thereon * * *." 325 F2d at 309.

*T.S.C. Motor Freight Lines, Inc. v. United States,* 186 F Supp 777 (SD Tex 1960), *aff'd sub nom Herrin Transportation Co. v. United States et al,* 366 US 419 (1961), involved proceedings on applications for certificates of public convenience and necessity for motor carriage. The Interstate Commerce Commission granted two applications using a vote-by-notation procedure. This procedure allowed commission members to vote by mail rather than at a conference at which they were assembled. Four motor carriers brought an action to set aside the certificates as invalid because the vote-by-notation procedure was not published in

[1]The Administrative Procedures Act, 5 USC § 552(b) (1970), superseded the provisions excepting from disclosure any matter relating to the internal management of an agency. 5 USC § 552(b) (1970), now excepts matters "related to the internal personnel rules and practices of an agency * * *."

the Federal Register. The court held that publication of the procedure was specifically exempted from the publication requirement:

"* * * Obviously the procedure is solely a matter of internal procedure within the Commission. It does not purport to inform parties of the procedure which is to be taken for the presentation of matters to the Commission. It is not designed for the guidance of the public because it in no way affects any steps which interested parties must take or not take in order to obtain, or review, action by the Commission * * *." 186 F Supp at 786.

In *Cafeteria & Restaurant Wkrs. U., Local 473 v. McElroy,* 284 F2d 173 (DC Cir 1960), *aff'd* 367 US 886, 81 S Ct 1743, 6 L Ed 2d 1230 (1961), a short-order cook employed by a private concessionaire operating a restaurant at the Naval Gun Factory was denied retention of her identification badge which had permitted her to enter the premises. The denial by the naval officer in command of the factory was based on the ground that the cook had failed to meet security requirements set out in navy regulations and manuals. The cook's union argued that the regulations and manuals were not valid because they were not published in the Federal Register. The court held that the power of the commander of a naval installation to control the ingress and egress of civilians was exempt from APA publication requirement. The court stated:

"* * * Furthermore the provision of the Act * * * excepts from publication 'any matter relating solely to the internal management of an agency'. In so far as these regulations prescribe the authority of the commanding officer over an installation such as the Gun Factory, they relate to the internal management of the Navy. The public effect is remote * * *." 284 F2d at 179.

■ The New York Constitution provides:

"No rule or regulation made by any state department, board, bureau, officer, authority or commission, except such as relates to the organization or internal management of a state department, board, bureau, authority or commission shall be effective until it is filed in the office of the department of state * * *." McKinney's Const Art IV, § 8.

In *Ingalls Iron Works v. Fehlhaber Corp.,* 29 App Div2d 29, 285 NYS2d 369 (1967), the Superintendent of Public Works issued an order delegating his authority to accept work on an interstate highway to the Deputy Chief Engineer. The issue was whether mechanics' liens had been timely filed within 30 days of completion and acceptance of a highway project. Appellants contended that the New York Constitution, Art IV, § 8, rendered the superintendent's delegation of authority ineffective because it was a rule not filed with the Department of State and that the 30-day period for filing liens had not expired because there had not been a valid acceptance of the highway project. The court held that this contention was

"\* \* \* not well founded for the order comes within the exception mentioned in the constitutional provision wherein it provides that such filing is unnecessary when the order 'relates to the organization or internal management of a state department.' \* \* \* The delegation of authority to the Deputy Chief Engineer was not the type of pronouncement dealing with the exercise of the department's legislative or quasi-legislative power to which the constitutional provision is directed, nor was it of such a nature that it affected or imposed burdens upon the public generally within the construed meaning of the provision, as it was purely a designation of authority within the agency's organizational structure. The Official Order with which we are here concerned clearly and plainly relates to the internal operation of the Department of Public Works and, as such, formed the basis of a valid acceptance of the improvement \* \* \*." 285 NYS2d at 372. (Citations omitted.)

We think it better serves the policy of the APA to interpret the phrase "internal management directive" narrowly so as to encompass only communications similar to the ones in the examples above. Such communications, or "directives," affect individuals solely in their capacities as members of the agency involved rather than as members of the general public who may have occasion to deal with the agency. Consequently, we disagree with the trial court's characterization of CSD's termination of direct payments for day care as

[ 151 ]

an "internal management directive" and hold it was error to dismiss plaintiff's suit. Plaintiff and others similarly situated were entitled to proper notice and an opportunity to be heard before CSD or the Department of Human Resources could issue a rule terminating the program of direct child-care payments.[2]

As to plaintiff's arguments based on the due process clause and 45 CFR § 205.10 (1975),[3] suffice it to say that due process requirements will be adequately met by the notice and hearing safeguards of the Oregon APA if termination of the direct payment program is again proposed, assuming *arguendo* that the due process clause applies to CSD's action. Likewise, the requirement of timely and adequate notice in 45 CFR § 205.10 (1975), will be satisfied.

Reversed and remanded.

---

[2] If CSD thought that an emergency existed because of its financial situation, it could have taken temporary action before giving child-care-aid recipients notice and a hearing. ORS 183.335(5) provides:

"Notwithstanding subsection (1) of this section, if an agency finds that its failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned, and sets forth the specific reasons for its finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt a rule without notice. Such rule is temporary and may be effective upon filing with the Secretary of State pursuant to ORS 183.355 for a period of not longer than 120 days. The subsequent adoption of an identical rule under subsection (1) of this section is not precluded."

[3] 45 CFR § 205.10(4) requires that timely and adequate notice be given "in cases of intended action to discontinue, terminate, suspend or reduce assistance * * *."