Argued and submitted November 7, 2014, affirmed June 22, 2016

Miguel Cabrera CRUZ,
*Plaintiff-Appellant,*

*v.*

MULTNOMAH COUNTY
and Multnomah County Sheriff's Office,
*Defendants-Respondents.*

Multnomah County Circuit Court
120911181; A155157

381 P3d 856

Jennifer J. Middleton argued the cause for appellant. With her on the opening brief were Kevin Diaz and Johnson, Johnson, Larson & Schaller, PC. With her on the reply brief were Kevin Diaz, Stephen William Manning, and Johnson, Johnson & Schaller, PC.

Carlos J. Calandriello argued the cause for respondents. With him on the brief was Jenny M. Madkour.

Anna Ciesielski filed the brief *amici curiae* for American Immigration Lawyers Association Oregon Chapter and National Lawyers Guild Portland Chapter.

Erin L. McKee filed the brief *amici curiae* for Oregon Justice Resource Center, Center for Intercultural Organizing, Oregon Dream Activist, and Causa.

Before Armstrong, Presiding Judge, and Egan, Judge, and Wollheim, Senior Judge.

## ARMSTRONG, P. J.

Plaintiff brought two claims for damages against defendants Multnomah County and Multnomah County Sheriff's Office (MCSO) based on his detention in the Multnomah County Jail under a federal immigration detainer. He alleged a claim for false imprisonment and a claim based on violation of ORS 181A.820(1).[1] On cross-motions for summary judgment, the trial court ruled in favor of defendants, concluding that they were immune under the Oregon Tort Claims Act (OTCA), ORS 30.265(6)(f),[2] from liability to plaintiff for false imprisonment and that there is no private right of action for violations of ORS 181A.820(1). Plaintiff appeals. We conclude that the trial court did not err, and affirm.

"On review of cross-motions for summary judgment, we examine whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law." *Vision Realty, Inc. v. Kohler*, 214 Or App 220, 222, 164 P3d 330 (2007). Here, the parties agreed to a joint statement of stipulated facts; therefore, the relevant facts before us—as they were before the trial court—are undisputed.

---

[1] Plaintiff alleged his claim under *former* ORS 181.850 (2011), *renumbered as* ORS 181A.820 (2015). The statute has not changed; we refer to the renumbered statute throughout this opinion. ORS 181A.820(1) provides:

"No law enforcement agency of the State of Oregon or of any political subdivision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of federal immigration laws."

[2] In 2011, the provision was numbered as ORS 30.265(3)(f) (2011), but it is now numbered as ORS 30.265(6)(f). Or Laws 2011, ch 270, § 1. We use the current numbering throughout this opinion. ORS 30.265(6) provides, as relevant here, that "[e]very public body and its officers, employees and agents acting within the scope of their employment or duties, * * * are immune from liability for:

"(f) Any claim arising out of an act done or omitted under apparent authority of a law, resolution, rule or regulation that is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice."

For brevity, where the context allows, we refer to "[e]very public body and its officers, employees and agents" as "public actors," and we refer to "a law, resolution, rule or regulation" as a "law," or, collectively, as "laws."

The following facts are drawn from the parties' joint statement of stipulated facts, supplemented by undisputed facts in the record. Plaintiff was arrested on October 14, 2011, for disorderly conduct and booked into the Multnomah County Jail, which is operated by defendants.

That same evening, October 14, defendants received a fax from Immigration and Customs Enforcement (ICE) with the heading, "Immigration Detainer - Notice of Action." The detainer included a statement that the United States Department of Homeland Security (DHS or the Department) had initiated an investigation to determine whether plaintiff was subject to removal from the United States. It also stated: "Under Federal regulation 8 CFR § 287.7, DHS requests that you maintain custody of this individual for a period not to exceed 48 hours (excluding Saturdays, Sundays, and Federal holidays) to provide adequate time for DHS to assume custody of the alien."[3] The detainer was not accompanied by a warrant, an affidavit of probable cause, or a removal order.

---

[3] 8 CFR section 287.7 provides, in part:

"(a) Detainers in general. * * * Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer–Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

"* * * * *

"(c) Availability of records. In order for the Department to accurately determine the propriety of issuing a detainer, serving a notice to appear, or taking custody of an alien in accordance with this section, the criminal justice agency requesting such action or informing the Department of a conviction or act that renders an alien inadmissible or removable under any provision of law shall provide the Department with all documentary records and information available from the agency that reasonably relates to the alien's status in the United States, or that may have an impact on conditions of release.

"(d) Temporary detention at Department request. Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

"(e) Financial responsibility for detention. No detainer issued as a result of a determination made under this chapter I shall incur any fiscal obligation

Defendants continued to hold plaintiff on the disorderly conduct charge and another misdemeanor until his arraignment on October 17, 2011. At the arraignment, the charges against plaintiff were reduced to violations and the court issued an order stating "release def this case only." At that point, plaintiff was no longer subject to detention on any pending state or local charge, but defendants continued to hold him pursuant to the immigration detainer. Defendants held plaintiff for approximately 38 hours beyond the time that they otherwise would have released him, but for the detainer. ICE took plaintiff into custody on October 19, 2011. The federal government did not reimburse defendants for the cost of plaintiff's detention for the time that he was held beyond the time that he would otherwise have been released.

Plaintiff subsequently filed this action, alleging (1) that defendants had falsely imprisoned him during the 38 hours that he was held after his arraignment and (2) that defendants were liable for violating ORS 181A.820(1). Defendants' answer asserted that defendants had detained plaintiff under the authority of a federal regulation and that, even if that regulation were invalid, unconstitutional, or inapplicable, they were immune from liability under the apparent-authority immunity provision of the OTCA. Defendants also argued that ORS 181A.820 did not apply to their detention of plaintiff and, in any event, does not provide for a private right of action.

The parties filed cross-motions for summary judgment. The only issues in dispute on summary judgment for the false-imprisonment claim were whether plaintiff's detention was unlawful[4] and whether defendants were immune under the OTCA. Among the issues on summary judgment on plaintiff's statutory tort claim was whether ORS 181A.820(1) created a private right of action. The trial

---

on the part of the Department, until actual assumption of custody by the Department, except as provided in paragraph (d) of this section."

(Italics omitted.)

[4] False imprisonment has four elements: (1) the defendant confined the plaintiff; (2) the defendant intended the act of confinement; (3) the plaintiff was aware of being confined; and (4) the confinement was unlawful. *Fossen v. Clackamas County*, 271 Or App 842, 847, 352 P3d 1288 (2015).

court concluded that defendants were immune under the OTCA and that there was no legislatively created statutory tort for violations of ORS 181A.820. Accordingly, the trial court granted summary judgment for defendants, denied summary judgment for plaintiff, and entered a judgment in favor of defendants.

Plaintiff appeals, raising three assignments of error. He first assigns error to the trial court's failure to expressly rule that defendants' detention of plaintiff was unlawful.[5] He next assigns error to the trial court's grant of summary judgment on plaintiff's false-imprisonment claim on the ground that defendants were immune under the OTCA. In his last assignment, he contends that the trial court erred in granting summary judgment on plaintiff's claim under ORS 181A.820 on the ground that the statute does not provide for a private right of action.[6] We write to address only the second and third assignments of error; as explained in footnote 5, we reject plaintiff's first assignment of error without extended discussion.

## I.  APPARENT-AUTHORITY IMMUNITY

We first consider plaintiff's claim that the trial court erred in concluding that defendants were immune from liability under ORS 30.265(6)(f), the apparent-authority immunity provision of the OTCA. The OTCA partially waives the state's sovereign immunity, and it provides for indemnification and immunity for public actors in certain circumstances. ORS 30.260 - 30.300; *see Horton v. OHSU*, 359 Or 168, 221-25, 376 P3d 998 (2016) (discussing history, function, and purposes of OTCA). ORS 30.265(6)(f) provides that public actors are immune from liability if they act without

---

[5] Although plaintiff did not allege a claim for declaratory relief, plaintiff requested in his prayer for relief a declaration that his detention was unlawful. We note that plaintiff would not be entitled to any of the relief in his prayer for relief unless and until defendants were found liable on one of plaintiff's claims. In light of our disposition of the second and third assignments of error, we reject plaintiff's first assignment of error without further discussion.

[6] Although his assignments of error are not in the form prescribed by ORAP 5.45(3) (requiring that assignments of error "identify precisely the *** ruling that is being challenged"), we understand plaintiff to assign error to the trial court's rulings granting defendants' motion for summary judgment and denying plaintiff's motion for partial summary judgment, on each of the identified grounds, and we describe the assignments consistently with that understanding.

bad faith or malice under the "apparent authority" of a law, but the law is "unconstitutional, invalid or inapplicable."

A. *The Parties' Arguments Below*

The parties agree that, when defendants detained plaintiff beyond the time that they would otherwise have released him, they did so based on the immigration detainer and the federal regulation that it invoked, 8 CFR section 287.7(d). Although we resolve plaintiff's second assignment of error as the trial court did—by concluding that defendants are immune under ORS 30.265(6)(f)—the parties' arguments to the trial court about 8 CFR section 287.7(d) are relevant to both the framing and resolution of that issue. Consequently, we set out the parties' arguments in some detail.

Defendants asserted in their motion for summary judgment that plaintiff's detention was lawful, and therefore did not constitute false imprisonment, because it was mandated by 8 CFR section 287.7(d). Plaintiff argued to the contrary that 8 CFR section 287.7(d) embodies merely a request, not a mandate; it could not, therefore, authorize plaintiff's detention, because defendants were prohibited by constitutional and statutory provisions from complying with the request.

8 CFR section 287.7(d) provides:

"Temporary detention at Department request. Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department."

(Italics omitted.) At the time of plaintiff's detention, defendants understood 8 CFR section 287.7(d) to require the detention: The Department had made a "determination" to issue an immigration detainer, and plaintiff was "not otherwise detained by" defendants; defendants, therefore, "shall maintain custody of" plaintiff "for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit" the Department to take plaintiff into custody. 8 CFR section 287.7(d). Defendants specifically pointed to

the wording of 8 CFR section 287.7(d)—*viz.*, "shall maintain custody"—as establishing that the regulation commanded defendants to detain plaintiff, notwithstanding any state law to the contrary.[7]

Plaintiff argued in his motion for summary judgment, and in response to defendants' motion that, notwithstanding the detainer and 8 CFR section 287.7(d), defendants' detention of plaintiff was unlawful. He asserted that his detention was unlawful under Article I, section 9, of the Oregon Constitution and under the Fourth Amendment to the United States Constitution because defendants lacked probable cause to believe that he had committed a crime for which he could be detained, and, he argued, the detainer did not provide defendants with probable cause. Plaintiff also asserted that his detention was prohibited under state law by ORS 181A.820(1). Moreover, he contended, contrary to defendants' assertion, 8 CFR section 287.7(d) could not render plaintiff's detention lawful because, even if the regulation purported to authorize or require such a detention, that would violate the federal constitution. He argued further that the regulation could not provide authority for a detention that was contrary to state constitutional and statutory law, because a detainer issued under the regulation is merely a request to law enforcement agencies to hold a person, and defendants were prohibited under state law from complying with such a request.

Plaintiff made a number of arguments in support of his construction of 8 CFR section 287.7(d) as embodying a request rather than a command. He examined the text of the detainer, noting that the relevant portion is worded in terms of requests:

**"It is requested that you:**

"Please accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work,

---

[7] A federal regulation, like a federal statute, can preempt state law in the event of a conflict between the laws. *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 US 707, 713, 105 S Ct 2371, 85 L Ed 2d 714 (1985) ("[S]tate laws can be pre-empted by federal regulations as well as by federal statutes.").

and quarters assignments, or any other treatment which he or she would otherwise receive.

"[checked box] Under Federal regulation 8 CFR § 287.7, DHS requests that you maintain custody of this individual for a period not to exceed 48 hours (excluding Saturdays, Sundays, and Federal holidays) to provide adequate time for DHS to assume custody of the alien."

(Boldface in original.) He also analyzed the text of 8 CFR section 287.7, pointing out that subsection (a) states that a detainer is "a request"; contending that, if subsection (d) were interpreted as mandatory, it would violate anti-commandeering principles of the Tenth Amendment to the United States Constitution and would exceed the Department's Congressional authorization; and noting that the Department had made statements asserting that 8 CFR section 287.7(d) is not mandatory.

Plaintiff advanced a harmonizing construction of 8 CFR section 287.7(d) "that comports with the rest of the regulation, the authorizing statute, and the commands of the Constitution," which construed the regulation as a whole as authorizing the making of requests to law enforcement agencies. Under plaintiff's construction, the word "shall" operates to "place[] an outer limit on the length of time that a local law enforcement agency may hold an individual pursuant to a detainer." In support of that interpretation, he quoted the Supreme Court's statement in *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 US 568, 575, 108 S Ct 1392, 99 L Ed 2d 645 (1988), that, "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."

In their answer, and as part of their arguments on the cross-motions for summary judgment, defendants raised a defense of apparent-authority immunity under ORS 30.265(6)(f). That assertion countered plaintiff's arguments that his detention was not, and could not be, authorized or mandated by 8 CFR section 287.7(d) as defendants had

asserted. Defendants pointed out in response to plaintiff's arguments that, even if construing 8 CFR section 287.7(d) as mandatory—as they had—would cause the regulation to be "unconstitutional, *** invalid, or inapplicable ***, [d]efendants are still immune from liability and entitled to summary judgment as a matter of law" because they "acted in accordance with and pursuant to the plain language of" the regulation.

Plaintiff responded to defendants' defense of apparent-authority immunity by arguing that the regulation did not provide apparent authority because it is merely a request, and defendants could lawfully choose not to comply. Plaintiff also argued that defendants' assertion of the defense should be rejected in light of the fact that, in April 2013 (plaintiff's detention was in 2011), defendants had changed their practice of complying with all immigration detainers, which, plaintiff asserted, meant that defendants "believe[] [MCSO] has the leeway not to follow the regulation." He argued that defendants' assertion of apparent-authority immunity under those circumstances "suggests bad faith."

B.   *The Trial Court's Ruling*

The trial court ruled in defendants' favor. In its letter opinion, the court, quoting *Arizona v. United States*, 567 US ___, ___, 132 S Ct 2492, 2498, 183 L Ed 2d 351 (2012), noted that the federal government has broad authority over " 'the subject of immigration and the status of aliens,' " which " 'rests, in part, on the National Government's constitutional power to "establish a[] uniform Rule of Naturalization," US Const, Art I, § 8, cl 4, and its inherent power as sovereign to control and conduct relations with foreign nations.' "

The trial court reasoned that, if apparent-authority immunity applied to defendants' act of detaining plaintiff, then it would be unnecessary for the court to construe 8 CFR section 287.7. The court then examined the application of ORS 30.265(6)(f) to this case. It concluded that defendants were immune from liability because it was undisputed that defendants' act of detaining plaintiff after his arraignment was pursuant to the detainer and 8 CFR section 287.7, the detention was under the "apparent authority" of the

regulation, and plaintiff had not contended that defendants had acted in bad faith or with malice.[8] The trial court reasoned that each of plaintiff's arguments for why the regulation did not or could not authorize the detention was at its core a contention that the regulation was unconstitutional, invalid, or inapplicable, which are the circumstances in which apparent-authority immunity applies.

C. *Analysis and Application of Apparent-Authority Immunity*

On appeal, plaintiff renews the arguments that he made to the trial court, with some additions and refinements that respond to the trial court's expressed reasoning.[9]

---

[8] Although, as noted, plaintiff did state that defendants' assertion of apparent-authority immunity based on a mandatory reading of 8 CFR section 287.7(d) "suggests bad faith" in light of defendants' later decision not to comply with some detainers, that did not amount to a contention that defendants had acted in bad faith when they detained plaintiff. Plaintiff did not argue below, and does not argue to us, that defendants acted in bad faith or with malice when they detained plaintiff.

[9] Defendants contend that plaintiff's arguments are not preserved. We agree that plaintiff's arguments have shifted somewhat on appeal. However, the question whether apparent-authority immunity applied to plaintiff's false-imprisonment claim was squarely presented to and addressed by the trial court, and the reason for the shift in argument is that the trial court framed and analyzed the issues slightly differently from the way in which defendants had done that. Under those circumstances, plaintiff's arguments on appeal are sufficiently preserved. *See State v. Coburn*, 146 Or App 653, 657, 934 P2d 579 (1997) ("Irrespective of the shifting arguments of both parties on appeal, it is clear that the issue before us is the same as the one squarely presented to the resentencing court[.]").

In a related vein, as part of his arguments on appeal, plaintiff asserts that defendants conceded during a colloquy with the trial court that, if 8 CFR section 287.7(d) is not mandatory, then they would "lose this case." We note that, even if defense counsel's statements during that colloquy amounted to a legal concession—a proposition that we find to be doubtful—it would be immaterial to our task of reviewing plaintiff's claims of error on appeal. The trial court recognized in its letter opinion that the relevant question in applying ORS 30.265(6)(f) was not the correct construction of 8 CFR section 287.7(d), but, rather, whether, when defendants detained plaintiff, they had acted under the *apparent* authority of that regulation. Our task is to determine whether the trial court's ruling was erroneous as plaintiff asserts; defendants are not precluded on appeal from arguing that the trial court's ruling, and reasoning, are correct. *State v. Bailey*, 143 Or App 285, 292, 924 P2d 833 (1996) ("[H]old[ing] the state to its legal concession below * * * cannot be squared with this court's essential function" as "an error-correcting court; we reverse or modify trial court rulings only if those rulings are erroneous as asserted by the party assigning or cross-assigning error." (Citations omitted.)); *see also State ex rel. Juv. Dept. v. Pfaff*, 164 Or App 470, 476, 994 P2d 147 (1999) (en banc), *rev den*, 331 Or 193 (2000) (holding that state's concession to trial court did not preclude assertion or consideration of conceded ground on appeal).

We confine our analysis to the arguments that merit discussion. Those arguments reduce to two main contentions: (1) apparent-authority immunity has a reasonableness requirement, and defendants' interpretation of 8 CFR section 287.7 was unreasonable; (2) apparent-authority immunity does not apply when the regulation in question is constitutional, valid, and applicable and defendants have simply misinterpreted it.

### 1. *Reasonableness of interpretation of law*

Plaintiff argues that a requirement of apparent-authority immunity under ORS 30.265(6)(f) is that the defendants' interpretation of the law be objectively reasonable, which he equates with "apparent." In support of that contention, he cites *Eads v. Borman*, 351 Or 729, 277 P3d 503 (2012), which concerns the doctrine of "apparent authority" in the principal/agent context. *See id.* at 736 ("Under this court's settled cases, '[a]pparent authority to do any particular act can be created only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter.'" (Quoting *Jones v. Nunley*, 274 Or 591, 595, 547 P2d 616 (1976).)).

Plaintiff does not explain why the principal/agent doctrine that he identifies would provide relevant context in determining the meaning of ORS 30.265(6)(f), and we are not persuaded that it does. Moreover, although we agree that the word "apparent" in ORS 30.265(6)(f) does aid in determining the boundaries of apparent-authority immunity, we do not conclude that the legislature intended for its application to be limited as strictly as plaintiff posits. Rather, as we explain below, the legislature intended to provide immunity to public actors who act without bad faith or malice under a law's "apparent authority"—that is, in accordance with a plausible construction of the law—but the law on which the public actors relied is unconstitutional, invalid, or inapplicable.

To determine what the legislature intended the boundaries of apparent-authority immunity to be, we examine the words of the statute itself and the relevant context. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). In

providing immunity to those acting "under apparent authority of a law," the legislature specified that the authority be "apparent." In context, the sense of the word "apparent" that the legislature intended is described in *Webster's Third New Int'l Dictionary*, 102-03 (unabridged ed 2002), as "readily manifest to senses or mind as real or true and supported by credible evidence of genuine existence but possibly distinct from or contrary to reality or truth." In that sense "apparent" is "distinguished from *actual*," and is synonymous with "seeming," "ostensible," and "illusory," and "may imply only distinctness from reality or truth." *Id.* at 103 (emphasis in original); *cf. Ailes v. Portland Meadows*, 312 Or 376, 381, 823 P2d 956 (1991) (in plain-error context, "apparent" means something that is "obvious," or "not reasonably in dispute").

The legislature's word choice does not suggest that reliance on apparent authority may occur only after an investigation into the validity of the relied-upon law. Rather, the text of ORS 30.265(6)(f) indicates that the legislature intended that public actors acting without bad faith or malice could rely on their plausible interpretation of laws without facing liability for failing to investigate, harmonize, or adopt constructions that hedge against possible future invalidation. Accordingly, ORS 30.265(6)(f) applies to public actors who, acting without bad faith or malice, rely on their plausible interpretation of laws that turn out to be unconstitutional, invalid, or inapplicable.

The legislative history of ORS 30.265(6)(f) supports that construction of the text. In 1967, when the OTCA as a whole was enacted, it contained a provision that stated that the OTCA waiver of immunity did not apply to "[a]ny claim based upon an act or omission of an officer, employe[e] or agent, exercising due care, in the execution of a valid or invalid statute, charter, ordinance, resolution or regulation." ORS 30.265(2)(d) (1967).[10] In 1969, the legislature replaced

---

[10] ORS 30.265 (1967) has been amended and its subsections renumbered multiple times. *See* Or Laws 1969, ch 429, § 1; Or Laws 1975, ch 609, § 12; Or Laws 1977, ch 823, § 2; Or Laws 1981, ch 490, § 4; Or Laws 1985, ch 731, § 31; Or Laws 1987, ch 705, § 7; Or Laws 1991, ch 861, § 1; Or Laws 2005, ch 22, § 19; Or Laws 2007, ch 803, § 4; Or Laws 2011, ch 270, § 1. The apparent-authority immunity provision is now in ORS 30.265(6)(f).

that provision with a provision that closely resembles the current version of ORS 30.265(6)(f). The new provision removed the requirement that, for immunity to apply, the person on whose act the claim was based must have been "exercising due care" in the execution of the "valid or invalid" law. Instead, the new provision applied to acts done under the "apparent authority" of laws, and excluded acts "done or omitted in bad faith or with malice." Or Laws 1969, ch 429, § 1. Those changes indicate a legislative intention to replace a negligence standard in carrying out laws with a good-faith-belief standard, limited by the contours of "apparent authority."[11]

*Higgins v. Redding*, 34 Or App 1029, 580 P2d 580 (1978), a case in which we applied apparent-authority immunity, is consistent with that understanding. The plaintiff in *Higgins* was arrested on a warrant that a judge had issued based on the judge's belief that the plaintiff had violated the terms of his probation. The warrant was not supported by a sworn complaint. On appeal, we considered whether the judge could be liable for false arrest. We noted that the Supreme Court had held in *Utley v. City of Independence*, 240 Or 384, 390, 402 P2d 91 (1965), that a judge who issues a warrant without a sworn complaint is not afforded judicial immunity, because "there is no judicial business properly before him, and he acts as a private citizen."

---

[11] Exhibits that were submitted to the House Judiciary Committee, Exhibits H and I, House Judiciary Committee, HB 1515, Mar 10, 1969 (accompanying statement of Bureau of Governmental Research and Service attorney Joseph T. Henke), by an attorney identified in the committee minutes as a principal drafter of the bill, Minutes, House Committee on Judiciary, Mar 10, 1969, 2, reinforce that conclusion. Exhibit H, an explanation of the bill, states that the new provision "makes clear that public employe[e]s are immune from liability for enforcing a law in good faith without knowledge that it is invalid or inapplicable." Exhibit I, containing comments on the bill by section, explains that the apparent-authority immunity section of the bill was adapted from a California Code provision, Cal Gov't Code § 820.6, and that the new immunity provision "abrogates the Oregon rule [that] made a public employe[e] liable for enforcing an invalid statute even though done in good faith without knowledge of its invalidity." Exhibit I at 4. A California Senate Legislative Committee comment on the California provision notes that it "provides immunity to an employee who acts in good faith, without malice, and under the apparent authority of an unconstitutional, invalid or inapplicable enactment, even though the employee may have been negligent in his good faith belief that the enactment was constitutional, valid and applicable." *See* Cal Gov't Code § 820.6 (West 2016) (Senate Legislative Committee Comment following section 820.6).

However, we observed in *Higgins* that *Utley* involved "an original warrant of arrest rather than the continuing supervision of a probationer by a court." *Higgins*, 34 Or App at 1033. That was significant because a "court's powers with respect to a probationer are considerably broader than a court's powers with respect to the public at large," and a statute provided that a court could issue a warrant for a probationer's arrest for a probation violation at any time during probation. *Id.* at 1033-34. Unlike the statutes at issue in *Utley* governing arrest for crimes, the statute in *Higgins* did not, by its terms, require "that a sworn complaint or affidavit be made as a precondition to the issuance of the warrant." *Id.* at 1034. We expressly declined to determine whether Article I, section 9, of the Oregon Constitution ("no warrant shall issue but upon probable cause, supported by oath, or affirmation") or the Fourth Amendment to the United States Constitution ("no Warrants shall issue, but upon probable cause, supported by Oath or affirmation") might nevertheless impose that requirement. *Id.* Instead, we reasoned that it was "at least sufficient to say, for the purposes of this case, that the statute granted apparent authority to the district court judge to take the action he took, and the judge was therefore immune." *Id.*

Notably, the *Higgins* court did not undertake an analysis of whether the judge's reliance on the statute was reasonable. Rather, it pointed out that the judge had broad authority in the probation context and that the statute on which the judge had relied granted "apparent authority" for the judge's act. That we expressly declined to determine whether constitutional provisions might nevertheless impose an oath or affirmation requirement confirms that a person invoking apparent-authority immunity is not required to analyze the validity of a statute before relying on it, or to adopt a construction that would avoid constitutional infirmities.

2. *Defendants acted under the apparent authority of 8 CFR section 287.7(d).*

In the context of this case, then, defendants acted under the "apparent authority" of 8 CFR section 287.7(6)(f) if that regulation at least plausibly required them to detain

plaintiff, as they believed that it did. Accordingly, we turn to whether defendants' construction of the regulation was plausible. Because the regulation has been the subject of much recent litigation, it is important to note that the relevant temporal context is whether defendants' construction was plausible at the time that they detained plaintiff in October 2011. That defendants have since changed their policy on complying with immigration detainers, or that a number of judicial decisions have since construed the regulation in the way that plaintiff advocates, has no bearing on that question.[12]

Defendants, citing *Davies Warehouse Co. v. Bowles,* 321 US 144, 152-53, 64 S Ct 474, 88 L Ed 635 (1944), assert that, as a general rule, laws are presumed to be constitutional, and only in rare circumstances are public officials obligated to refuse to follow or give effect to a law that has

---

[12] Plaintiff cites numerous cases as authority in support of his contention that defendants' construction of the rule is incorrect and unreasonable. Plaintiff cites only two cases, however, that are relatively on point on the issue at hand and were decided before plaintiff's detention, *Buquer v. City of Indianapolis,* 797 F Supp 2d 905, 911 (SD Ind 2011) (describing immigration detainer and 8 CFR section 287.7(d) as merely a request to hold a person), and *Committee for Immigrant Rights of Sonoma County v. County of Sonoma,* 644 F Supp 2d 1177, 1196, 1206 (ND Cal 2009) (holding that 8 CFR section 287.7 is valid, and agreeing that "ICE has the authority to issue immigration detainers that require County Defendants to take and hold persons in local custody, even in the absence of an arrest for a controlled substance violation"). Those cases do not establish that defendants' construction of 8 CFR section 287.7(d) was implausible.

Even including the more recent cases that the parties cite, instead of establishing that there is only one reasonable way to construe 8 CFR section 287.7(d), as plaintiff contends, those cases show that, when presented with the same question defendants faced—whether detainers that invoke 8 CFR section 287.7(d) are mandatory or mere requests—courts have arrived at different conclusions. *See Galarza v. Szalczyk,* 745 F3d 634, 640-45 (3d Cir 2014) (construing 8 CFR section 287.7(d) as merely a request, and noting potential constitutional and statutory infirmities if interpreted as mandatory); *Miranda-Olivares v. Clackamas County,* No 3:12–CV–02317–ST, 2014 WL 1414305, *4-*8 (D Or Apr 11, 2014) (construing 8 CFR section 287.7(d) as a request, but noting that conflicting judicial interpretations show that text of rule is ambiguous); *Ramirez-Mendoza v. Maury County, Tenn,* No 1:12–CV–00014, 2013 WL 298124, *8 (MD Tenn Jan 25, 2013), *appeal dismissed,* 13-5256 (6th Cir May 23, 2013) (holding that an "ICE detainer imposed a federal mandate upon the Defendant" to maintain custody of the plaintiff); *Moreno v. Napolitano,* No 11 C 5452, 2012 WL 5995820, *5 (ND Ill Nov 30, 2012) (interpreting "mandatory language" of 8 CFR section 287.7(d) as requiring detention pursuant to detainer). In light of those conflicting conclusions, the cases cited do not lead us to conclude that defendants' 2011 construction of the regulation was implausible.

not been ruled unconstitutional. *See also Grossman v. City of Portland*, 33 F3d 1200, 1209 (9th Cir 1994) ("[W]hen a city council has duly enacted an ordinance, police officers on the street are ordinarily entitled to rely on the assumption that the council members have considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority."). As explained, defendants construed 8 CFR section 287.7(d) as requiring them to detain plaintiff when they no longer had any other authority to detain him. They construed the other parts of 8 CFR section 287.7, *see* 279 Or App at 4 n 3 (quoting applicable text of rule), as expressing requests for information and cooperation during the time that plaintiff was being held under state or local laws, and they construed subsection (d) as containing a mandatory command that comes into effect when the person named in the detainer would otherwise be released.

Plaintiff argues to the contrary that, in light of the other provisions of the regulation, which are framed as requests, and in light of the "clear and obvious" constitutional and statutory "infirmities," it was unreasonable for defendants to construe a single instance of the word "shall" as a mandatory command. Instead, the regulation should be construed, according to plaintiff, as expressing only requests, with subsection (d) merely setting a limit on the length of time that law enforcement agencies in receipt of detainers are asked to voluntarily hold the people named in the detainers, once they are no longer being held for any other reason. But we need not determine whether plaintiff's suggested construction of the regulation is correct, or more plausible than defendants' construction, because the question before us concerns solely whether *defendants'* construction was plausible.

We conclude that defendants' construction of 8 CFR section 287.7(d) was based on the text of the regulation, relied on an ordinary meaning of the word "shall," and was part of a coherent construction of the regulation as a whole. Because defendants' construction of 8 CFR section 287.7(d) was plausible, they acted under the apparent authority of that regulation.

### 3. *Apparent-authority immunity applies to misinterpretations of otherwise valid laws.*

Plaintiff also contends that ORS 30.265(6)(f) provides "no immunity * * * for a sheriff's misinterpretation of a valid regulation," because "apparent authority immunity does not apply" when the law in question "is not unconstitutional, invalid or inapplicable." Plaintiff argues that, properly construed, 8 CFR section 287.7(d) is not inapplicable to his detention and that defendants merely misinterpreted the regulation as requiring them to detain him. According to plaintiff, if the correctly construed regulation is not, in fact, unconstitutional, invalid, or inapplicable, then apparent-authority immunity does not apply to defendants' reliance on the regulation as authority to detain him.

Plaintiff simply misconceives the nature of an inapplicable law for purposes of apparent-authority immunity. A valid law that is misconstrued by a public actor to authorize or require the public actor to take a particular action is an inapplicable law—for purposes of apparent-authority immunity—if the law, properly construed, would not authorize or require the action. That is what occurred here, and our cases that have applied apparent-authority immunity confirm that a misconstrued law can constitute an inapplicable law under the statute.

For example, in *Elvrum v. Fish Commission*, 14 Or App 1, 510 P2d 593 (1973), the plaintiffs alleged a claim that the defendants had "willfully, wrongfully or negligently *misinterpreted the applicable statutes* in denying [an] application" for a water permit. *Id.* at 5 (emphasis added). The defendants asserted that they had acted under the apparent authority of several laws. We noted that the cause of action "was based on the contention that the statutory authority for the acts [was] either unconstitutional or inapplicable" and proceeded to apply apparent-authority immunity. *Id.* at 7.

Similarly, in *Burke v. Children's Services Division*, 288 Or 533, 546-47, 607 P2d 141 (1980) (*Burke II*), the Supreme Court noted that, in an earlier iteration of that case, *Burke v. Children's Services Division*, 26 Or App 145, 147-48, 552 P2d 592 (1976) (*Burke I*), we had held that the law on which

the defendants had relied was inapplicable. The plaintiff had contended in *Burke I* that the defendants had terminated a benefits program without following certain procedures required by law. 26 Or App at 147-48. The defendants had asserted that their termination of the program was not subject to those requirements because it fell under an exception for "internal management directives." *Id.* We held that the exception for internal management directives did not apply. *Id.* at 151. Defendants had, therefore, misinterpreted the law as permitting the program to be terminated without following the required procedures. In *Burke II*, the Supreme Court held that apparent-authority immunity applied to the defendants' reliance on the misinterpreted exception. *Burke II*, 288 Or at 547-48. Thus, apparent-authority immunity can apply even when the apparent authority on which the public actors relied is based on a misinterpretation of an otherwise valid law.

In sum, the trial court correctly concluded that defendants had acted under the apparent authority of 8 CFR section 287.7(d) in detaining plaintiff and were therefore immune from liability to plaintiff for his detention. We therefore affirm the trial court's summary judgment rulings on plaintiff's false-imprisonment claim.

## II. STATUTORY TORT UNDER ORS 181A.820(1)

We turn to plaintiff's statutory tort claim.[13] ORS 181A.820(1) provides that Oregon law enforcement agencies are not to use their funds, "equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of federal immigration laws." Plaintiff alleged in his complaint a statutory tort based on defendants' violation of that statute. Defendants argued on summary judgment that the legislature did not create a private right of action for money

---

[13] The trial court resolved the statutory tort claim on the basis that there is no private right of action sounding in tort for violations of ORS 181A.820. Defendants do not argue on appeal that we should affirm the trial court's summary judgment rulings on that claim on the alternative ground that, even if such a claim exists, defendants would be immune under ORS 30.265(6)(f) from liability on it, and we express no opinion on that issue.

damages for violations of ORS 181A.820(1). The trial court assumed without deciding that ORS 181A.820(1) prohibited defendants' use of public resources to detain plaintiff, and that it also imposed an obligation on defendants to release people "in plaintiff's situation." It concluded, however, that plaintiff's claim under the statute nevertheless failed as a matter of law because the legislature had not created a private right of action sounding in tort for violation of the duty imposed by the statute. The trial court consequently denied plaintiff's motion for partial summary judgment and granted defendants' motion for summary judgment on plaintiff's statutory tort claim.

Our standard of review on this claim is the same as on the previous claim, and the facts here are those to which the parties stipulated for purposes of summary judgment. *See Vision Realty*, 214 Or App at 222 ("On review of cross-motions for summary judgment, we examine whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law.").

Plaintiff assigns error to the trial court's summary judgment rulings, arguing that the trial court erroneously concluded that the legislature did not create a private right of action for enforcement of ORS 181A.820(1). He acknowl-edges that "the legislature did not expressly include a right of action for people harmed by violations of the statute," but he contends that the statute imposes a duty and that the legislature intended to provide a private right of action for enforcement of that duty. Defendants argue in response that the text and context of the statute reveal no legislative intention to create a statutory tort, and that the legislative history of the statute instead reveals a contrary intention. As we will explain, we agree that the legislature's inten-tion was not to create a statutory tort for violation of the duty imposed by ORS 181A.820(1). The trial court, there-fore, correctly concluded that plaintiff's claim under ORS 181A.820(1) fails as a matter of law.[14]

---

[14] Briefing in this case was completed before the Supreme Court decided *Doyle v. City of Medford*, 356 Or 336, 338-39, 337 P3d 797 (2014), in which it held that, "where a statute imposes a legal duty, but there is no indication that the legislature intended to create (or not to create) a private right of action for its enforcement, courts must (if such relief is sought) determine whether the

The Supreme Court has explained that, "[w]hen a party asserts a right of action to enforce a duty created by a statute, the first question is whether the statute expressly or impliedly indicates that the legislature intended to create or to deny such a right of action. That is a matter of statutory construction." *Doyle v. City of Medford*, 356 Or 336, 363, 337 P3d 797 (2014). Here, plaintiff alleged his claim as a "statutory tort." We begin, then, with an examination of the text, context, and legislative history of ORS 181A.820(1) to determine if there is an indication that the legislature "intended to create or to deny" statutory liability sounding in tort.[15] *Id.* at 338-39; *Deckard v. Bunch*, 358 Or 754, 759-60, 370 P3d 478 (2016).

ORS 181A.820(1) prohibits Oregon law enforcement agencies from using funds, equipment, or personnel on certain activities. It appears to be in the nature of a policy directive from the state to law enforcement agencies and the public bodies overseeing them on how public funds, equipment, and personnel are to be used. Even if ORS 181A.820(1) imposes a duty on law enforcement agencies not to engage in the listed activities, that alone is not enough to conclude that the legislature intended to create a statutory tort for violation of that duty. *Deckard*, 358 Or at 765-66.

*Doyle* explains that, "[i]n determining whether the legislature impliedly intended to create a private right of action for violation of a statutory duty, this court has generally focused on two factors." 356 Or at 345. The first factor

---

judicial creation of a common-law right of action would be consistent with the legislative provision, appropriate for promoting its policy, and needed to ensure its effectiveness." Plaintiff did not argue to the trial court, or to us, for creation of a common-law right of action based on ORS 181A.820(1), and because we conclude that the legislature intended *not* to create a new private right of action for enforcement of the statute, that would in any event end the inquiry. *See* 356 Or at 338-39.

[15] As did the trial court, we assume without deciding that ORS 181A.820(1) applied to defendants' unreimbursed detention of plaintiff after the criminal charges against him were reduced to violations. We pause also to clarify terminology. As the Supreme Court explained in *Doyle*, 356 Or at 338 n 2, 344 n 6, a private right of action for enforcement of a statutory duty can take the form of either statutory liability, if intended by the legislature, or a judicially created right of action. Further, statutory liability may sound in tort or take some other form. Here, because plaintiff alleged a "statutory tort," the question is whether the legislature intended to create new statutory liability sounding in tort, to which we refer for brevity as a statutory tort.

is "whether the statute refers to civil liability in some way." *Id.* (citing *Chartrand v. Coos Bay Tavern Inc.*, 298 Or 689, 696, 696 P2d 513 (1985), *abrogated by Deckard*, 358 Or at 788-89, and *Nearing v. Weaver*, 295 Or 702, 708, 670 P2d 137 (1983)). The second factor is "whether the statute provides no express remedy, civil or otherwise, for its violation and, therefore, there would be no remedy of any sort unless the court determined that the legislature impliedly created one or the court itself provided one." *Id.* at 345-46 (citing *Chartrand*, 298 Or at 696, and *Nearing*, 295 Or at 708-10). *See also Deckard*, 358 Or at 760 (setting out two factors, noting that they are "neither exclusive nor talismanic," and explaining that methodology for determining legislature's intention to create or not to create statutory liability remains examination of statutory text, context, and legislative history).

Although the statutes in *Chartrand* and *Nearing* did not expressly create liability, the text or context of the *Chartrand* and *Nearing* statutes referred to limitations on civil liability in a way that implied to those courts a legislative intention to create statutory liability. *Doyle*, 356 Or at 345. Here, plaintiff has not identified—nor have we found— anything in the text or relevant context of ORS 181A.820(1) that refers to civil liability. Plaintiff does point to the legislative history of the statute as addressing liability, which he suggests indicates that the legislature was, in fact, contemplating creation of a statutory tort when it enacted the statute. The problem with plaintiff's argument, however, is that the legislative history provided by the parties suggests that the legislature's intention was *not* to subject law enforcement agencies to increased liability through creation of a new statutory tort. Rather, the legislative history, as defendants point out, indicates that the legislature, recognizing existing liability in these circumstances, was concerned with *reducing* the potential liability of law enforcement agencies.

The legislative history of ORS 181A.820(1) indicates that among the concerns that led the legislature to enact the statute were problems with "increased litigation and insurance costs against cities and counties for false arrests by local police" and "questions of infringements [of] civil rights

just because a person looks like an alien" when "local police try to enforce federal immigration law." Exhibit E, Senate Judiciary Committee, HB 2314, May 20, 1987 (accompanying statement of Rep Rocky Barilla). One representative expressly stated that, "[i]n these times of higher insurance costs, we do not need to broaden the potential liability issue." Exhibit B, House Judiciary Committee, HB 2314, Feb 6, 1987 (accompanying statement of Rep Rocky Barilla). In addition, a staff measure analysis indicated that "[l]ocal and state law enforcement agencies have no authority under federal law to enforce immigration laws, and have been successfully challenged when they have tried," and noted that "law enforcement personnel in certain communities" nevertheless sometimes "stop and interrogate people using immigration law as the basis for the stop." Staff Measure Analysis, Senate Judiciary Committee, HB 2314, June 3, 1987 (underscore omitted). The same analysis described the "function and purpose" of the bill as to "codify existing practice." *Id.* (capitalization omitted). We are persuaded that the legislature's intention was to reduce the potential liability of law enforcement agencies under existing law by expressly prohibiting problematic activities, and not to create additional liability through creation of a new statutory tort. *See Deckard*, 358 Or at 787 (concluding that text, context, and legislative history of statute that addressed civil liability established that legislature was concerned with limiting, not expanding, liability).

We turn to the second factor that the *Doyle* court identified as a "focus" in "determining whether the legislature impliedly intended to create a private right of action." 356 Or at 345-46. Analyzing that factor requires us to determine whether the lack of an express remedy in the statute would mean that "there would be no remedy of any sort." *Id.* The legislative history, as discussed above, specifically recognized existing liability for law enforcement agencies engaging in the activities prohibited by ORS 181A.820(1) through claims for false arrest, and alluded to potential infringements of civil rights, for which there were, and are, existing rights of action. In addition, because ORS 181A.820(1) is a restriction on the use of "agency moneys," there were, and are, enforcement mechanisms relating to unauthorized

expenditures of public funds. *See* ORS 294.100 (prohibiting expenditures for "different purpose[s] than provided by law," and providing for enforcement by district attorney, taxpayer, or tax supervising and conservation commission of county); *Burt v. Blumenauer*, 65 Or App 399, 405, 672 P2d 51 (1983), *aff'd*, 299 Or 55, 699 P2d 168 (1985) ("Funds expended in activities which are generally authorized, but specifically forbidden, are for a 'different purpose than provided by law' under ORS 294.100(1)."). We conclude that, although the statute did not create a new "express remedy * * * for its violation," that does not mean that "there would be no remedy of any sort unless the court determined that the legislature impliedly created one or the court itself provided one." *Doyle*, 356 Or at 345-46; *see also Deckard*, 358 Or at 793 (holding, in light of existing common law tort liability, that legislature did not intend statute limiting liability to create new statutory liability).

Because consideration of the text, context, legislative history, and availability of alternative mechanisms of enforcement leads to the conclusion that the legislature's intention was *not* to create new statutory liability of the kind that plaintiff asserted—a statutory tort—that ends the inquiry. *Id.*

We conclude that there is no statutory tort based on ORS 181A.820(1). Accordingly, we affirm the trial court's summary judgment rulings on plaintiff's ORS 181A.820(1) statutory tort claim.

Affirmed.